IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Scott Douglas Parker, #197951, | ) | C/A No. 5:15-04648-TLW-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden, Broad River Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Scott Douglas Parker ("Petitioner"), a state prisoner, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 25, 26. On May 2, 2016, pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the Motion for Summary Judgment, the dismissal procedures, and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 27. On June 2, 2016, Petitioner filed a "Return and Memorandum of Law in Support of Motion for Summary Judgment" in opposition to Respondent's Return and Motion for Summary Judgment. ECF No. 30. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 26, be granted.

I.      Background

Petitioner is currently incarcerated in the Broad River Correctional Institution ("BRCI") of South Carolina Department of Corrections ("SCDC"). ECF No. 1 at 1. In 2009, Petitioner was

indicted during the October term of the Lexington County Grand Jury for two counts of criminal sexual conduct with a minor at least 14 years of age but less than 16 years of age (2009-GS-32-822, and -849) and three counts of criminal sexual conduct with a minor at least 11 years of age but less than 14 years of age (2009-GS-32-850, -851, and -852). App. 534-535, 537-538, 540-541, 543-44, 546-47.[1] Petitioner proceeded to a jury trial on October 4-7, 2010, before the Honorable R. Knox McMahon. App. 1. Petitioner was represented by Attorney John Wesley Locklair, III, and the State was represented by Deputy Solicitor David Shawn Graham and Assistant Solicitor Kate E. Whetstone. *Id.* The jury found Petitioner guilty of all charges. App. 391-92, 534, 537, 540, 543, 546. Judge McMahon sentenced Petitioner to four concurrent twenty-year terms of imprisonment (for 2009-GS-32-822 and -849 and 2009-GS-32-850 and -851), and to a consecutive twenty-year term of imprisonment for the remaining charge (2009-GS-32-852). App. 406-08, 536, 539, 542, 545, 548.

Appellate Defender Dayne C. Phillips represented Petitioner in the appeal of his convictions and sentences, raising two issues by brief:

(1) Did the trial court err by refusing to grant a mistrial where Appellant's right to confrontation of witnesses and due process was adversely affected when the State failed to reveal records which contained impeachment evidence for a substantial portion of trial which prejudiced defense counsel's ability to confront the key witnesses in a trial based solely on the credibility of the key witnesses?

(2) Did the trial court err by refusing to grant a continuance where Appellant was unable to present a complete defense when the State failed to reveal records which contained impeachment evidence for a substantial portion of trial which prejudiced defense counsel's trial strategy by not having enough time to adequately investigate those records?

---

[1] Citations to "App." refer to the Appendix for Petitioner's trial transcript, appeal from his sentence and conviction, and his claim for collateral relief in the state courts of South Carolina. That Appendix is available at ECF Nos. 25-1 through 25-14 in this habeas matter.

ECF No. 25-6 at 3. On October 31, 2012, the South Carolina Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished opinion (No. 2012-UP-592), and on November 27, 2012, the South Carolina Court of Appeals issued a Remittitur. ECF Nos. 25-8, 25-9.

II.     Procedural History

Petitioner timely filed a pro se application for Post-Conviction Relief ("PCR") on January 3, 2013 (2013-CP-32-99). App. 411-20. In his PCR application, Petitioner alleged three general grounds:

    a)  Ineffective Assistance of Counsel
    b)  Prosecutorial Misconduct-Improper Comments
    c)  Improper vouching of expert witness

App. 413. Petitioner's memorandum of law, which argued each ground in greater detail, is set forth verbatim:

1. Counsel failed to give applicant Rule 5 discovery with phone records, investigative reports that could have been used to impeach the state's witnesses to show that they called the defendant and not that the defendant called them over 30 times. See pg.s 146 and 366 trial transcript. See Hart v. Gomez, 174 F.3d 1067, 1073 (9th Cir. 1999); also Tucker v. Prelesnik, 181 F.3d 747, 757 (6th Cir. 1999). Counsels failure to introduce and obtain known critical evidence prejudicial because a reasonable factfinder would likely not have convicted defendant had all relevant evidence been presented.

2. Counsel failed to adequately develop defense by cross-examining mother to establish what support the defendant gave her to support the thoery that the allegations were made up after he stopped supporting her. See pg.72 trial trans. Counsel failed to present this theory in the opening statement to the jury. Pg.s 90, 139, 142-43, 147-48.

3. Counsel failed to properly elicit on cross-examination the exact reasons why the mother stopped the victim from hanging out with Scott Parker. Pg. 91, 153-54. The reasons would have shown that defendant stopped giving the mother support in 2008.

4. Counsel failed to adequately cross examine the victims to show they had knowledge of sexual activity because the mother was an escort and both victims knew what an escort did and they knew of sexual activities and could have adequately made up the allegations. See Hill v. Moore, 175 F.3d 915,

923 (11th Cir. 1999). Failure to adequately cross examine witness constitutes ineffective assistance of counsel. See Steinkuehler v. Meschner, 176 F.3d 441, 445 (8th Cir. 1999).

5. Counsel failed to attack the credibility of mother with showing she was an escort and that her son and nephew knew that she done this for a living and that showing Scott parker knew this also and supported them would show that they had sufficient motive to make up a story alleging that defendant comitted the acts upon them and the mother had a reason to help them create the story. See pg. 72 and 151.

6. Counsel Failed to enter exculpatory evidence of the phone records to impeach the mother that showed they called the defendant not that the defendant called them. This could have been used to attack the credibility of the state's witness when she claimed defendant called them 30 times. See pg.s 146-47, 257, 366. Counsel also failed to present the statements the victims made to the jury to show the inconsistencies to cause reasonable doubt. See Groseclose v. Bell, 180 F.3d 1161, 1170 (6th Cir. 1997). (Counsel's failure to introduce exculpatory evidence was outside the range of proffessionally competant assistance.

7. Counsel failed to allege the testimony was coached by showing the jury the statements to have them determine the truthfulness of the statements by comparing them with the direct testimony of the witnesses. See pg.s 97, 103-107, 119-20, 132, 175. Counsel stated on record during cross that he told the prosecutors that it happened around 15 or 20 times and in pretrial it happened four to ten times. See pg.s 126-27.

8. Counsel failed to adequately cross examine Minor 1's Mother to ask her to explain why she didn't like defendant and to explain why she thought the victims would not make up this story and to ask her if she had any knowlege that defendant was supporting the victims mother. Counsel was ineffective for failing to recall the witnesses to elicit this testimony to support his defense in violation of Rule 611 (D).

9. Counsel failed to adequately recross MINOR 2 concerning the phone calls to Scott Parker and whether the defendant supported the mother also to support his theory of defense. See pg. 291-92.

10. Counsel was ineffective for failing to discover and utilize prior criminal records of prosecution witnesses. See People of State of Michigan v. Nickson, 120 Mich App. 681, 327 N.W.2d 333 (1982).

11. Counsel was ineffective for failing to obtain expert witness to testify as a defense as to reasons that a mother would have her son help make up allegations if she was suddenly cut off from support to show sufficient motive to initiate allegations of this nature. See pg. 339.

12. Counsel was ineffective for failing to present a viable defense. See pg. 256.

13. Counsel was ineffective for misadvising and not adequately explaining to applicant the extent of how they could use prior convictions in that only they could tell the jury he had felonies and not what the exact crimes were because they would be prejudicial. Counsel's misadvise prevented defendant from presenting his defense that the mother made up this whole story because he

4

        stopped giving her money to support her. Counsel's misadvise prejudiced the defendant to the extent he could not explain his defense to the jury and show the phone records to show that they constantly called him begging for money casting reasonable doubt on the victims story. See Pg.s 321, 347.

14. Counsel failed to object to vouching of the expert witness concerning Accomodation by inserting her opinion of accomodation by alleging we all do it. We all accomodate to things in our life we don't like. Pg.s 333-34. Futher, counsel fails to object again to the expert's vouching her own credibility by stating "Typically that would indicate to me that there had not been a false allegation made." Pg. 344.

15. Counsel failed to object to the prejudicial closing remarks of the solicitor stating "Is that something you would do?" "Or is it something a child molester like Scott Parker would do so they all could sleep together?" Pg.356 lines 22-23. The solicitor makes futher inflamatory remarks to play on the prejudices and passions of the jury by stating "But if you think they are lying and you don't believe them, find him not guilty." "Let him go." "The Masters Inn will always have a room avalible with a single bed." "Twenty Five feet away from you sits a "Predator", a "Child Molester". Counsel failed to object to these highly prejudicial remarks that inflammed the passions of the jury. Pg. 360 lines 7-23.

16. Counsel failed to properly preserve an objection for the court giving two different reasonable doubt instructions in violation of the Supreme Court ruling in "<u>Manning</u>" that only the "Hesitate To Act" instruction should be given. The two different instructions created a higher standard that prejudiced the defendant. See Pg.s 384-85.

17. The court erred in violation of due process of the 14th Amendment by giving two different jury instructions of "Firmly Convinced" and "Hesitate To Act" which changes the standard of reasonable doubt and is not approved by the Supreme Court in <u>State V. Manning</u>, Pg.s 371, 384-85.

18. The solicitor engaged in prosecutorial misconduct by stating in closing arguments highly prejudicial and inflamatory remarks used to play on the passions and prejudices of the jury.

19. Counsel engaged in a conflict of interest by not giving defendant his discovery, giving him misadvise, not impeaching the state's witnesses, not objecting to the improper comments, not properly cross examining the witnesses to present a complete defense, failing to introduce exculpatory records, and not preserving an objection to the reasonable doubt instructions.

App. 418-420. A Return was filed on behalf of the State on May 3, 2013. App. 422-27. On April

14, 2014, the Honorable William P. Keesley held a hearing on Petitioner's PCR application.

App. 429-504. Petitioner was present and represented by Attorney Anna R. Good; Assistant

Attorney General Walt Whitmire appeared on behalf of the State. App. 429. At the beginning of

the hearing, Ms. Good informed the court that Petitioner was proceeding solely on seven claims—those numbered One, Four, Six, Twelve, Thirteen, Fourteen, and Fifteen. App. 432-33. Petitioner and his trial counsel, Mr. Locklair, testified as witnesses during Petitioner's PCR hearing. App. 433-499. In an Order filed on June 3, 2014, the PCR court denied Petitioner's PCR application in full, making the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has reviewed the testimony presented at the evidentiary hearing, observed the witnesses presented at the hearing, passed upon their credibility, and weighed the testimony accordingly. Further, this Court reviewed the Clerk of Court records regarding the subject convictions, the application for post-conviction relief, the transcripts and documents from the prior proceedings, and legal arguments of counsel. Pursuant to S.C. Code Ann. § 17-27-80 (2003), this Court makes the following findings of fact based upon all of the probative evidence presented.

As a matter of general impression, this Court does not find Applicant be [sic] a credible witness. His claims relate to a variety of perceived errors and omissions on the part of trial counsel.

### A.

Applicant has failed to meet his burden to prove counsel was ineffective for failing to investigate Applicant's case. "[C]riminal defense attorneys have a duty to undertake a reasonable investigation, which at a minimum includes interviewing potential witnesses and making an independent investigation of the facts and circumstances of the case." Edwards v. State, 392 S.C. 449, 456, 710 S.E.2d 60, 64 (2011). This Court finds counsel's testimony here credible. This Court finds applicant has failed to produce the purported phone records that he alleged counsel was ineffective for failing to investigate. See Glover v. State, 318 S.C. 496, 458 S.E.2d 538 (1995) (applicant's allegations, alone, will not support a finding of prejudice when applicant claims counsel was ineffective for failing to investigate witnesses; instead, applicant must show the results of an investigation would have resulted in a different outcome at trial). Therefore, the allegation is denied and dismissed.

Applicant failed to prove counsel was ineffective for not inquiring into victim Minor 2's collateral D.J.J. investigations. Applicant was best situated to inform counsel of the prosepect [sic] of beneficial impeachment materials on the victims, their mothers, and other State witnesses based on his longstanding relationships with the State's key witnesses. He has failed to show the presence of

6

any evidence that would have reasonably necessitated counsel or the P.I. to look into the matter prior to trial. See U.S. v. Pellerito, 878 F.2d 1535, 1543 (1st Cir. 1989) ("If counsel was ineffective in any sense, it was only because the client rendered him so, first by keeping Noriega in the dark, and then, by refusing to heed his advice. This is not the sort of 'ineffectiveness' for which relief can be granted."). This Court notes our courts have never extended a duty of clairvoyance to criminal defense attorneys. Thornes v. State, 310 S.C. 306, 309-10, 426 S.E.2d 764, 765 (1993) ("This Court has never required an attorney to anticipate or discover changes in the law, or facts which did not exist, at the time of the trial."). Therefore, this allegation is readily denied and dismissed.

Applicant has failed to meet his burden to prove counsel was ineffective for failing to undergo sufficient preparation prior to trial. "The brevity of time spent in consultation with a defendant alone is not indicative of inadequate trial preparation." Smith v. State. 404 S.C. 493, 500, 745 S.E.2d 378, 382 (Ct. App. 2012). Counsel has presented no credible evidence in support of this allegation. See Skeen v. State, 325 S.C. 210, 214-15, 481 S.E.2d 129, 132 (1997) (finding applicant was not entitled to post-conviction relief where there was no evidence presented at the PCR hearing to show how additional preparation would have had any possible effect on the result of the trial). Therefore, this allegation is readily denied and dismissed.

## B.

This Court finds counsel provided convincing reasons for not expanding his cross-examinations of the victims on the matters referenced by Applicant. A valid trial strategy cannot support the basis of a finding of ineffective assistance of counsel. Caprood v. State, 338 S.C. 103, 110, 525 S.E.2d 514, 517 (2000). "The Supreme Court has specified, furthermore, that such an individual 'must convince the court' that such a decision 'would have been rational under the circumstances.'["] Padilla v. Kentucky, 559 U.S. —, —, 130 S. Ct. 1473, 1485 (2010). The challenger's subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012). "For judges to second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy . . . ." Jones v. Barnes, 463 U.S. 745, 103 S. Ct. 3308 (1983).

Counsel provided sound reasoning for not questioning the victims on the alleged immoral conduct of their mothers. See Huggler v. State, 360 S.C. 627, 635, 602 S.E.2d 753, 757 (2004) ("Moreover, given that this was a sexual abuse case involving children, it may have been prudent for counsel to limit cross-examination to the issues he thought were most important."). This allegation is denied and dismissed.

Counsel provided sound reasoning for not utilizing the Applicant's phone records in his cross-examination of the victims. This Court finds counsel's testimony here credible. There has been no showing that pursuing the phone records further would have been likely to change the result of these cases, and the court accepts as reasonable the attorney's determination that any such effort could reinforce Applicant's alleged inappropriate relationship with the victims. See Stokes v. State, 308 S.C. 546, 548, 419 S.E.2d 778, 779 (1992) (finding counsel's decision to not call witnesses reasonable where their testimony would have been of no value to the case and they made inconsistent statements in the past). This Court finds counsel provided sound reasoning on his decision not to question the victims on the prior sexual knowledge at the time of disclosures. The benefits of this line of questioning were merely speculative and uncertain. Similarly, the allegation that counsel failed to adequately impeach State witnesses with their prior convictions is entirely unsubstantiated and speculative. Therefore, these allegations are denied and dismissed.

Counsel exhibited exemplary performance in his cross-examination of the victims and their mothers on motive. "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." Burt v. Titlow,— U.S. —, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013). Counsel elicited testimony that showed victim Minor 2's mother had a personal distaste for Applicant. He elicited testimony that established Applicant's decision to no longer provide the victims gifts as a motive for fabrication among other things. Applicant has failed to present credible evidence to show that counsel's performance here was lacking. This Court finds that any additional questioning on motive would have been cumulative and probably diminish Applicant's case. See Edwards, 392 S.C. at 459, 710 S.E.2d at 66 ("The case before us today is not one where the proffered evidence would have exonerated Petitioner had it been presented. Instead, Marshall's testimony simply would have been cumulative to evidence already introduced through other witnesses."). Therefore, this allegation is denied and dismissed.

## C.

Applicant has failed to meet his burden to prove counsel was ineffective for failing to properly advise him on his right to testify. "Failure to inform a client of his Fifth Amendment rights and the consequences of exercise and waiver of those rights falls below an objective standard of reasonable representation." Brown v. State, 340 S.C. 590, 595, 533 S.E.2d 308, 310 (2000). "The decision to testify or not is a perilous one. If a defendant does not testify, he foregoes the opportunity to tell the jury his version of events. On the other hand, if a defendant chooses to testify, he subjects himself to cross-examination, including possible impeachment with prior convictions." Id., at 594, 533 S.E.2d at 310. This Court finds counsel's testimony substantially more credible than Applicant's testimony on the matter. Applicant has failed to overcome counsel's credible testimony that

Applicant never desired to testify. In addition, the trial judge addressed the matter with Applicant in a thorough colloquy. See Id., at 595, 533 S.E.2d at 310 ("An on-the-record waiver of a constitutional or statutory right is but one method of determining whether the defendant knowingly and intelligently waived that right."). The record shows Applicant was provided sufficient time to alter his decision post-colloquy and made the decision not to testify. Regardless, Applicant has offer evidence in this PCR case that is sufficient to meet Strickland's prejudice prong. See Id., at 596, 533 S.E.2d at 311. Therefore, the allegation is denied and dismissed.

### D.

Applicant has failed to meet his burden to prove counsel was ineffective for failing to object to State's witness Heather Smith's qualification as an expert in the field of child sexual abuse. This Court finds that relevant law at the time of trial supported the trial judge's qualification of the witness. See State v. Schumpert, 312 S.C. 502, 505, 435 S.E.2d 859, 861 (1993). Therefore, this allegation is denied and dismissed.

Applicant failed to prove counsel was ineffective for failing to object to Smith's testimony that allegedly bolstered the credibility of the victims. (Trial Tr. p. 344). This Court finds Counsel provided sound reasoning for not objecting here. Counsel noted that her testimony was in part helpful for the defense. Victim Minor 2 [sic] had previously recanted his false allegations of child abuse against his mother. See Rhodes v. State, 349 S.C. 25, 561 S.E.2d 606 (2002) (finding that trial counsel articulated an objectively reasonable strategy for his failure to object and was not ineffective). Regardless, Applicant failed to prove the testimony at issue constituted improper bolstering. This Court finds Applicant failed to prove the alleged error here constituted prejudice in light of his convincing evidence of guilt. See State v. Kromah, 401 S.C. 340, 361-62, 737 S.E.2d 490, 501 (2013) (subjecting the erroneous qualification of a forensic interviewer to a harmless error analysis). Therefore, this allegation is denied and dismissed.

### E.

Applicant failed to meet his burden to prove counsel was ineffective for failing to object to comments made by the solicitor during the State's closing argument. A solicitor's closing argument must be carefully tailored so as not to appeal to the personal biases of the jury. State v. Copeland, 321 S.C. 318, 324, 468 S.E.2d 620, 624 (1996). The State's closing arguments must be confined to evidence in the record and the reasonable inferences that may be drawn from the evidence. Id. "A solicitor has a right to state his version of the testimony and to comment on the weight to be given such testimony." Randall v. State, 356 S.C. 639, 642, 591 S.E.2d 608, 610 (2004). The proper inquiry is not whether the Solicitor's remark was undesirable or condemnable, but whether the comment "so infected the trial with unfairness as to make the resulting conviction a denial of

due process." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

Even if the court were to find that solicitor reference to Applicant as a predator was objectionable, there is no showing that the comment rendered the trial unfair. In the context of the offense for which he was charged and convicted, and the evidence before the jury, the Applicant has failed to prove that the failure to object to this comment likely changed the outcome of the trial. (Trial Tr. p. 360). <u>See</u> <u>State v. Lee</u>, 269 S.C. 421, 237 S.E.2d 768 (1977) ("[Statement that defendant was a "menace to society" could not be considered prejudicial since that concept forms the very basis for crimes involving moral turpitude."). The law does not require counsel to raise every available non-frivolous defense. <u>Jones v. Barnes</u>, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Therefore, this allegation is denied and dismissed.

Applicant failed to prove counsel was ineffective for failing to object to the solicitor's comment that "the Masters Inn will always have a room available with a single bed." (Trial Tr. p. 360). This Court finds the comment did not constitute a 'Golden Rule violation.' <u>See</u> <u>State v. Reese</u>, 370 S.C. 31, 38, 633 S.E.2d 898, 901 (2006). "A Golden Rule argument asking the jurors to place themselves in the victim's shoes tends to completely destroy all sense of impartiality of the jurors, and its effect is to arouse passion and prejudice.")[.] There is no proof that this argument falls within a prohibited effort to have the jurors put themselves in the victim's place.

This Court also finds that the comment at issue was not sufficiently prejudicial to warrant reversal. The comment constituted an inference on the evidence presented that supported the State's theory of the case. <u>See</u> <u>Smith v. State</u>, 375 S.C. 507, 654 S.E.2d 523 (2007) (concluding any impropriety in the solicitor's closing argument was not sufficient to grant defendant post-conviction relief where solicitor's improper use of the pronoun "I" was limited, did not recur throughout his argument, there was overwhelming evidence of the defendant's guilt, and the trial judge instructed the jury not to consider counsel's statements as evidence). Again, in the context of the offense for which he was charged and convicted, and the evidence before the jury, the Applicant has failed to prove that the failure to object to this comment likely changed the outcome of the trial. Therefore these allegations are denied and dismissed.

F.

Applicant's allegation that counsel was ineffective for failing to object to the trial judge's allegedly erroneous and prejudicial jury instruction on reasonable doubt is without merit. [Where trial judge gave erroneous instruction on critical issue of intent, PCR applicant was prejudiced by counsel's failure to object. <u>Pauling v. State</u>, 350 S.C. 278, 285, 565 S.R2d 769, 772 (2002).] This Court finds any objection to the trial judge's instruction on reasonable doubt would have been

ill-founded. <u>State v. Darby</u>, 324 S.C. 114, 115, 477 S.E.2d 710 (1996) ("At trial, the trial judge defined reasonable doubt as "the kind of doubt that would cause a reasonable person to hesitate to act." This charge was approved by this Court in <u>State v. Manning</u>, 305 S.C. 413, 409 S.E.2d 372 (1991)."). Therefore this allegation is denied and dismissed.

G.

Except as discussed above, this Court finds that the Applicant affirmatively abandons the remaining allegations set forth in his application at the hearing. A waiver is a voluntary and intentional abandonment or relinquishment of a known right. <u>Janasik v. Fairway Oaks Villas Horizontal Property Regime</u>, 307 S.C. 339, 415 S.E.2d 384 (1992). A waiver may be express or implied. "An implied waiver results from acts and conduct of the party against whom the doctrine is invoked from which an intentional relinquishment of a right is reasonably inferable." <u>Lyles v. BMI, Inc.</u>, 292 S.C. 153, 158-59, 355 S.E.2d 282 (Ct. App. 1987). The Applicant's failure to address these issues at the hearing indicates a voluntary and intentional relinquishment of his right to do so. Therefore, any and all remaining allegations are denied and dismissed.

**CONCLUSION**

Based on all the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this Court to grant his application for post-conviction relief. Therefore, this application for post-conviction relief must be denied and dismissed with prejudice.

This Court notes that Applicant must file and serve a notice of intent to appeal within thirty (30) days from receipt of this Order to secure the appropriate appellate review. <u>See</u> Rule 203, SCACR. Rule 71.1(g), SCRCP, <u>Bray v. State</u>, 336 S.C. 137, 620 S.E.2d 743 (2005), for the obligation of Applicant's counsel to file and serve notice of appeal. The Applicant's attention is also directed to South Carolina Appellate Court Rule 243 for appropriate procedures after notice has been timely filed.

**IT IS THEREFORE ORDERED**

1. That the Application for Post-Conviction Relief must be denied and dismissed with prejudice; and
2. Applicant must be remanded to the custody of Respondent[.]

App. 523-33.[2] Attorney Good timely served a Notice of Appeal on June 17, 2014, and filed the Notice of Appeal on June 18, 2014. ECF No. 25-10. On February 20, 2015, Appellate Defender John H. Strom filed a Petition for Writ of Certiorari on Petitioner's behalf which presented two issues for review:

1. Whether Petitioner's Sixth Amendment rights were violated when counsel failed to object to testimony from child abuse specialist Heather Smith regarding a theoretical profile of a typical male adolescent victim of sexual abuse, tailored to the facts of Petitioner's case, introduced for the sole purpose of advancing expert opinion testimony on the credibility of the complainants and to imply the guilt of Petitioner?

2. Whether Petitioner's Sixth Amendment rights were violated when counsel failed to object to the Solicitor's improper "Golden Rule" closing argument where he impermissibly appealed to the passions of the jurors by arguing, *inter alia*, that if jurors found Petitioner not guilty they would be complicit in the continued sexual abuse of children and where the Solicitor asked jurors to consider if Petitioner's behavior was something the jurors would have done, or if it was something that "a child molester" would have done?

ECF No. 25-11 at 2. On June 22, 2015, Attorney General Alan Wilson and Staff Attorney Patrick L. Schmeckpeper filed a Return on behalf of the State. ECF No. 25-12. The South Carolina Supreme Court denied the Petition for Writ of Certiorari on September 23, 2015, and issued the Remittitur on October 14, 2015. ECF Nos. 25-13, 25-14. On November 16, 2015, Petitioner filed the present Petition. ECF No. 1-1 at 1.[3]

III.    Discussion

   A.    Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

---

[2] The court notes that page 528 of the Appendix is a duplicate of page 527.

[3] *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (state prisoner's pro se petition for habeas corpus relief is deemed "filed" at moment of delivery to prison authorities for forwarding to district court).

GROUND ONE: Trial court erred by refusing to grant a mistrial.

Supporting Facts: The Appellant's rights to confrontation of witness and due process was adversely affected when state failed to reveal records which contained impeachment evidence for a substantial portion of trial which prejudiced defense counsel's ability to confront the key witnesses in a trial solely based on the credibility of the key witnesses. ECF No. 1 at 6.

GROUND TWO: Trial court erred in refusing to grant a continuance.

Supporting Facts: The Appellant was unable to present a complete defense when the State failed to reveal records which contained impeachment evidence for a substantial portion of trial which prejudied defense counsel's trial strategy by not having enough time to adequately investigate those records. *Id*. at 7-8.

GROUND THREE: Trial court erred in violation of due process of the 14 Amendment.

Supporting Facts: The trial court erred by giving two differen jury instructions of "Firmly Convinced" and "Hesitate to Act" which changes the standard of resonable doubt and is not approved by the Supreme Court. *Id*. at 9.

GROUND FOUR: Ineffective Assistance of Counsel

See Attached Sheets

Supporting Facts: *Id*. at 10.

(A) Counsel failed to give Applicant Rule 5 discovery with all the investigated reports that contained impeachment material.

(B) Counsel failed to introduce and obtain known critical evidence that a reasonable fact find would have made know which the defendant would not have been convicted if all relevent evidence had been presented (see Attach copy) *Id*. at 11.

(C) Counsel <u>failed</u> to adequately develop defense by cross examining mother to establish what supported the defendant. everything stopped after he stopped supporting her. Then the allegations started *Id*. at 17.

(D) Counsel <u>failed</u> to attack the credibility of mother with showing that she was in the sex trade (striper, escort) it shows that they all had knowledge of sexual activities and adequately made the allegations up. *Id*.

(E) Counsel <u>failed</u> to present the statements the alleged victims made to the jury to show the inconsistence to cause resonable doubt it shows the testimony was coached by comparing them with direct testimony of the witnesses. *Id*.

(F) Counsel <u>failed</u> for failing to obtain or discover and utilize prior criminal records of prosecutions witnesses *Id*.

(G) Counsel <u>failed</u> by not obtaining and expert witness to testify as a defense as to reasons that a mother and the allege victims would make up the allegations it would support when the money stopped the allegations suddenly started it show motive *Id*.

(H) Counsel <u>failed</u>: misadvising and not adequately explaining to the applicant the extent of how they could use prior conviction in that only they could tell the

jury he had felonies and not what the exact crime were because they would be preducial an that prevented the defendant from presenting his defense. *Id.*

(I) <u>Counsel</u> <u>failed</u> to object to vouching of the expert witness concerning accomodation by inserting her on opinion and again on her vouching her own credibility on  *Id.* at 18.

(J) <u>Counsel</u> <u>failed</u> to object to the prejudicial closing remarks of the solicitor stating "Is that something a child molester like Scott Parker would do so they all could sleep together the solicitor kept making inflanatory remarks to play on the prejudices and passion of the jury counsel failed by not objecting to these highly prejudicial remarks that inflammed the passion of the jury *Id.*

(K) Counsel engaged in a conflict of interest by not giving defendant his discovery. misadvising on testifying not objecting to the highly inflammatory remarks and the improper comments, not properly cross-examining the wittnesses to present a complete defense. Not preserving and objection to the reasonable doubt instructions *Id.*

Prosecution misconduct by stating in closing arguments highly prejudicial and inflamatory remarks used to play on the passion and prejudices of the jury *Id.*

GROUND FIVE: Improper vouching of expert witness
Supporting Facts: Inserting her personal opinion
vouching on her own credibility in state
By her vouching it prejudices the jury. *Id.* at 19.

GROUND SIX: <u>Improper Reasonable Doubt Instruction</u>
Supporting Facts: Counsel failed to properly preserve and objection for the court giving two different reasonable doubt instructions in violation of the Supreme Court ruling in "<u>Manning</u>" that only the "<u>Hesitate to Act</u>" instruction should be given. The two different instructions created a higher standard that prejudiced the defendant. *Id.* at 22.

GROUND SEVEN: <u>Prosecutional Misconduct</u>
Supporting Facts: Solicitor erred in not bringing forth critical brady material in a proffessional and timely manner and making highly prejudicial and inflamatory remarks to play on the passion and prejudices of the jury Prosecution should not have immunity from making mistakes like this in trial *Id.* at 25.

B.      Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth

14

specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see*, *e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

C.     Habeas Corpus Standard of Review

1.     Generally

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615,

618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. §§ 2254(d)(1)-(2); *see Williams v. Taylor*, 529 U.S. 362, 397-98 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

a)     Deference to State Court Decisions

Federal courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005) (per curiam). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 563 U.S. 170 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102. The Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.; see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on claims of ineffective assistance of counsel).

16

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court has held:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) *"contrary to . . .* [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) *"involved an unreasonable application of . . .* clearly established Federal law, as determined by the Supreme Court of the United States.

*Williams*, 529 U.S. at 404-05 (quoting from § 2254(d)(1)). "'[C]learly established Federal law' in § 2254(d)(1) 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citation omitted). A district court's review of a state court decision is "deferential because [the court] cannot grant relief unless the state court's result is legally or factually unreasonable." *Bell v. Jarvis*, 236 F.3d 149, 163 (4th Cir. 2000) (en banc) (*quoting Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)).

Section 2254(e)(1) requires that the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a

presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2) only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b)     Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance "fell below an objective standard of reasonableness" as measured "under prevailing professional norms." *Id.* at 688. Second, the petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Petitioner bears the burden of proving an error and resulting prejudice in his ineffective-assistance-of-counsel claim. *Id.*

The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (citations omitted); *see also Pinholster*, 563 U.S. at 190 (review of state court's decision is "doubly deferential") (citations omitted).

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits . . . ." 563 U.S. at 180-81. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 182. In *Pinholster*, the

district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id.* at 180. A divided panel of the Court of Appeals for the Ninth Circuit reversed. *Pinholster v. Ayers,* 525 F.3d 742 (9th Cir. 2008). The Court of Appeals granted rehearing en banc, vacated the panel opinion, and affirmed the district court's grant of the writ. 563 U.S. at 180. The United States Supreme Court granted certiorari and reversed the Ninth Circuit, holding that the district court should not have considered additional evidence that had not been available to the state courts. *Id.* at 180-81. Because § 2254's habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." *Id.* at 182 (citations omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

        2.      Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute grants jurisdiction to a district court to entertain "an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on

the ground that he is in custody in violation of the Constitution or laws or treaties of the United States[,]" 28 U.S.C. § 2254(a), and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the district court will consider the claim. 28 U.S.C. § 2254(b)(1)(A). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent the unusual circumstances detailed below.

a)     Exhaustion

Section 2254 provides in pertinent part:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

     (A)     the applicant has exhausted the remedies available in the courts of the State; or

     (B)     (i) there is an absence of available State corrective process; or

               (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Thus, the statute requires that a petitioner first must exhaust his state court remedies prior to seeking habeas corpus relief. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (citations omitted), *overruled on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, "a person in custody has two primary means of attacking the validity of his conviction: filing a direct appeal and/or filing an application for relief under the South Carolina Post Conviction Procedure Act." *Stewart v. Warden of Lieber Corr. Inst.*, 701 F. Supp. 2d 785, 790 (D.S.C. 2010); *Wilson v. State*, 559 S.E.2d 581, 582-83 (S.C. 2002) ("every defendant has a right to file a direct appeal and one PCR application.") (footnote omitted). State law requires that all grounds for appeal are to be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. § 17-27-90; *see generally* S.C. Code Ann. §§ 17-27-10—160 (Uniform Post-Conviction Procedure Act);[4] *Blakely v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007) (per curiam). Further, strict time deadlines govern the filing of direct appeals and those seeking PCR in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days

---

[4] The United States Court of Appeals for the Fourth Circuit has held that South Carolina's Uniform Post-Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10—17-27-160, is a viable state-court remedy. *Miller v. Harvey*, 566 F.2d 879, 880-81 (4th Cir. 1977); *Patterson v. Leeke*, 556 F.2d 1168, 1170-73 & n.1 (4th Cir. 1977) (per curiam).

after the sentence is imposed or after receiving written notice of entry of the order or judgment. SCACR 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson*, 556 F.2d at 1173. In filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the South Carolina Supreme Court actually reached the merits of the claim. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454, 454 (S.C. 1990)).

b)     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the

federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. SCACR 203(d)(3). If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *Reed v. Ross*, 468 U.S. 1, 11 (1984). As the United States Supreme Court explains:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Id.* at 10-11 (citation omitted). However, "[i]f a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A federal court is barred from considering the filed claim (absent a showing

23

of cause and actual prejudice). *Sykes*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)). Procedural default is an affirmative defense that is waived if not raised by a respondent. *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). To overcome a respondent's assertion of procedural default, it is a petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1362-63 (4th Cir. 1995).

3.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court nonetheless may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). A federal court will review a procedurally defaulted claim if the petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 495-96; *see also Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review by showing cause for the default and prejudice from a violation of federal law.") (quoting *Coleman*, 501 U.S. at 750). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray v. Carrier*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also

show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134-35 (1982). He must prove "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

If a petitioner cannot show cause and prejudice, he nonetheless may surmount the bar of procedural default and obtain habeas review if he can show "that a refusal to entertain those claims would result in a fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 309 (1995) (citation omitted). "This avenue of relief, however, is limited to 'an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Coleman*, 895 F.2d at 144 (*quoting Murray v. Carrier*, 477 U.S. at 496). Actual innocence "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citation omitted). To prevail under this theory, a petitioner must produce new evidence that was not available at trial to establish his factual innocence. *Royal v. Taylor*, 188 F.3d 239, 243-44 (4th Cir. 1999). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Schlup*, 513 U.S. at 327 (citation omitted).

IV.    Analysis

A.    Properly Exhausted Grounds

As an initial matter, Respondent states that Petitioner has exhausted all available state remedies as to Ground One and Ground Two and has argued these issues on the merits. ECF No. 25 at 33, 41-54. Respondent also concedes that two claims of ineffective assistance of counsel labeled (I) and (J) in Ground Four are properly before the federal court.

The court agrees with Respondent's analysis to the extent that Grounds One and Two were raised to and ruled upon by the trial court. App. 265, 306-07. Grounds One and Two are identical to Issues #1 and #2, respectively, that were raised in Petitioner's counseled direct appeal to the South Carolina Court of Appeals. ECF No. 25-6 at 3, 11. The Court of Appeals affirmed Petitioner's convictions in an unpublished per curiam opinion. ECF No. 25-8.

> 1.  GROUND ONE: Trial court erred by refusing to grant a mistrial
>
> Supporting Facts: The Appellant's rights to confrontation of witness and due process was adversely affected when state failed to reveal records which contained impeachment evidence for a substantial portion of trial which prejudiced defense counsel's ability to confront the key witnesses in a trial solely based on the credibility of the key witnesses.

As mentioned previously, a petitioner filing a federal habeas corpus petition in federal court may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the South Carolina Supreme Court actually reached the merits of the claim. *McKennedy*, 559 S.E.2d at 853. On appeal, Petitioner argued that the trial court erred when it refused to grant a mistrial. ECF No. 25-6. In his state court brief, Petitioner relied on both state and federal law; with respect to the latter, Petitioner raised a *Brady* violation and also argued that the trial court's alleged error violated the confrontation clause and his due process rights. ECF No. 25-6 at 12, 17. The South Carolina Court of Appeals' order affirming the trial court's decision was based solely on South Carolina law. ECF No. 25-8 at 2. However, because Petitioner raised the confrontation clause and due process issues before the Court of Appeals and in his habeas petition, the undersigned finds Ground One to be the proper subject of habeas corpus review and will address this issue below in the Merits section.

2.  GROUND TWO: Trial court erred in refusing to grant a continuance.

Supporting Facts: The Appellant was unable to present a complete defense when the State failed to reveal records which contained impeachment evidence for a substantial portion of trial which prejudied defense counsel's trial strategy by not having enough time to adequately investigate those records.

As this issue also was raised to the South Carolina Court of Appeals, the undersigned reviewed Petitioner's appellate brief with respect to this issue. Petitioner's arguments, as well as the Court of Appeals' order affirming the trial court's decision, were based solely on South Carolina law. ECF No. 25-6 at 17-19, ECF No. 25-8. As Petitioner's appeal of this issue complained only of alleged violations of state law, the undersigned finds that federal habeas relief is not available. *Placencia v. McFadden*, C/A No. 5:13-cv-1795 DCN, 2014 WL 2199984, at *10 (D.S.C. May 27, 2014) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions.") *appeal dismissed*, 591 F. App'x 198 (4th Cir. 2015) (per curiam)). Therefore, it is recommended that Respondent be granted summary judgment on Ground Two.

B.      Procedurally Barred Grounds

Respondent contends that Ground Three, claims (A), (B), (C), (D), (E), (F), (G), (H), and (K) in Ground Four, Ground Five, Ground Six, and Ground Seven were procedurally defaulted in state court and therefore are not subject to habeas review. ECF No. 25 at 34. The undersigned will address each procedural bar argument in turn.

1.  GROUND THREE: Trial court erred in violation of due process of the 14 Amendment.
    Supporting Facts: The trial court erred by giving two differen jury instructions of "Firmly Convinced" and "Hesitate to Act" which changes the standard of resonable doubt and is not approved by the Supreme Court. ECF No. 1 at 9.

In Ground Three, Petitioner alleges that the trial court's incorrect jury instructions constitute a violation of his right to due process as guaranteed by the Fourteenth Amendment. This claim may be cognizable in a habeas action pursuant to 28 U.S.C. § 2254(a), which provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *See also Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam) ("The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

The pertinent part of the state trial court's jury instruction stated:

> What is a reasonable doubt in the law? A reasonable doubt is the kind of doubt that would cause a reasonable person to hesitate to act. The State has the burden of proving the Defendant guilty beyond a reasonable doubt.
> Some of you in the past may have served as jurors in civil cases where you were told that it is only necessary to prove that a fact is more likely true than not true, such as by the greater weight or the preponderance of the evidence.
> In criminal cases the State's proof must be more powerful than that. It must be beyond a reasonable doubt. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the Defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If based on your consideration of the evidence you are firmly convinced that the Defendant is guilty of the crime charged, you must find the Defendant guilty.
> If, on the other hand, you think there is a real possibility that the Defendant is not guilty, you must give the Defendant the benefit of the doubt and find him not guilty.

App. 371-72. Respondent contends that the trial court's jury instruction is in accord with the reasonable doubt jury instruction approved in *State v. Darby*, 477 S.E.2d 710, 710 (S.C. 1996). *Darby*, in turn, employed the definition of reasonable doubt articulated in *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). *Brightman v. State*, 520 S.E.2d 614, 616 (S.C. 1999). Thus, the trial judge's charge to the jury was correct as a matter of law.

28

Next, Respondent argues that because counsel did not object to the instruction at trial, the issue was neither preserved for direct appeal to the South Carolina Court of Appeals nor preserved for federal habeas review. ECF No. 25 at 35. The undersigned agrees. As the record reflects, Petitioner's counsel did not lodge a contemporaneous objection to the trial court's jury instruction. "Under South Carolina's contemporaneous objection rule, an objection is waived unless made contemporaneously to the objectionable testimony." *Williams v. South Carolina*, 740 F. Supp. 1200, 1203 (D.S.C. 1990) (citations omitted). Because Petitioner's counsel did not contemporaneously object to the instruction, the objection was not preserved for appellate review. *Mizell v. Glover*, 570 S.E.2d 176, 180 (S.C. 2002) ("In order to preserve an issue for appellate review, the issue must have been raised to and ruled upon by the trial court.") (citations omitted). Because Petitioner's allegation of error was not preserved at trial, it could not have been properly presented in Petitioner's counseled direct appeal. *Id.* "Errors at trial not objected to, in contravention of State contemporaneous objection rules, are not cognizable in federal habeas corpus proceedings, absent a showing of cause for non-compliance and prejudice." *Satterfield v. Zahradnick*, 572 F.2d 443, 446 (4th Cir. 1978).

In his habeas Petition, Petitioner argues that there exists "cause" to excuse the procedural default because he asked his attorney to raise this issue on direct appeal, but "my attorney would not add to brief after I brought the ground up to him." ECF No. 1 at 9 (Ground Three(c)). Respondent does not address Petitioner's "cause" argument. Because Petitioner's allegation of error was not preserved at trial, it could not properly have been presented in Petitioner's counseled direct appeal. Regardless, the facts of this case do not meet the standard for cause, which "must be something *external* to the petitioner, something that cannot fairly be attributed to him[.]" *Coleman*, 501 U.S. at 753. "Attorney ignorance or inadvertence is not 'cause' because

the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Id.*, *citing Murray v. Carrier*, 477 U.S. at 488.

In the absence of cause, there is no need for this court to consider the issue of prejudice to determine that these claims are procedurally barred. *See Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into federal court."). Moreover, Petitioner does not claim he is actually innocent of the charges. *Bousley*, 523 U.S. at 623. Therefore, with respect to direct appeal, Ground Three is procedurally defaulted.

The undersigned notes that Petitioner, in his pro se PCR brief, raised the issue of the trial court's allegedly erroneous jury instruction as a freestanding claim which asserted that the court violated his Fourteenth Amendment right to due process. App. 420, Issue #17. At the PCR hearing, Plaintiff's PCR counsel, Ms. Good, stated she would not be going forward on this issue. App. 432-33. Nonetheless, the PCR court addressed the issue in its order, finding that the trial court's "charge was approved by this Court in <u>State v. Manning</u>, 305 S.C. 413, 409 S.E.2d 372 (1991)." App. 531-32. Petitioner did not appeal the PCR court's decision as to this issue. *See* ECF No. 25-11. Therefore, Petitioner failed to exhaust his state remedies as to this claim, and if Petitioner attempted to assert the claim at this time, the state court would find it time-barred. This claim is procedurally defaulted. Petitioner does not set forth any argument to establish the cause or causes that led to the procedural default of this issue, *Coleman*, 501 U.S. at 750, and he does not claim he is actually innocent of the charges, *Bousley*, 523 U.S. at 623. Ground Three is barred from habeas review, because it was procedurally defaulted on both direct and collateral

review. For the foregoing reasons, it is recommended that Respondent be granted summary judgment with respect to Ground Three.

### 2. GROUND FOUR: Ineffective Assistance of Counsel

Petitioner's Ground Four sets forth eleven claims of ineffective assistance of counsel, labeled (A) through (K). ECF No. 1 at 10-11, 17-18. As previously stated, Respondent argues that claims (A), (B), (C), (D), (E), (F), (G), (H), and (K) were procedurally defaulted in state court and are barred from federal habeas review. ECF No. 25 at 34. Respondent concedes that the two claims of ineffective assistance of counsel labeled (I) and (J) are properly before the federal court. *Id.* A discussion of each of these claims, including those that Respondent concedes are properly exhausted, is set forth below.

> (A) Counsel failed to give Applicant Rule 5 discovery with all the investigated reports that contained impeachment material.
> (B) Counsel failed to introduce and obtain known critical evidence that a reasonable fact find would have made know which the defendant would not have been convicted if all relevent evidence had been presented[.]

Respondent contends that these two claims are procedurally defaulted. ECF No. 25 at 34, 36. Petitioner does not offer any response. ECF No. 30 at 7. These claims were raised together as Issue #1 in Petitioner's application for PCR (App. 418), and Ms. Good argued these issues at the PCR hearing. App. 432. The PCR court specifically addressed these issues before denying relief. App. 524, 526. These claims were not set forth in Petitioner's appeal of the denial of PCR relief. *See* ECF No. 25-11. Therefore, the Petitioner failed to exhaust his state remedies as to these claims. If Petitioner were to assert these claims at this time, the state court would find them procedurally barred. *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001) (en banc) ("The procedural default doctrine bars a claim when the habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in

order to meet the exhaustion requirement would now find the claims procedurally barred.") (citations omitted).

The undersigned concludes that (A) and (B) are procedurally defaulted, and will be barred from habeas review unless Petitioner can show cause and prejudice, *Coleman*, 501 U.S. at 750, or actual innocence, *Bousley*, 523 U.S. at 623. Neither Petitioner's Petition nor the response in opposition to summary judgment sets forth any arguments to establish the cause or causes that led to the procedural default of these two issues. In the absence of cause, there is no need for this court to consider the issue of prejudice to determine that these claims are procedurally barred. *Rodriguez*, 906 F.2d at 1159. Moreover, Petitioner does not claim he is actually innocent of the charges. *Bousley*, 523 U.S. at 623. Therefore, Ground Four's claims (A) and (B) are barred from habeas review, and it is recommended that Respondent be granted summary judgment as to these claims.

> (C) Counsel failed to adequately develop defense by cross examining mother to establish what supported the defendant. everything stopped after he stopped supporting her. Then the allegations started[.]

Respondent argues that this issue also is procedurally defaulted. ECF No. 25 at 34, 37. Petitioner does not address the issue of procedural default in his response in opposition to summary judgment. ECF No. 30 at 7. This claim was raised as Issue #2 in Petitioner's application for PCR. App. 418. At the PCR hearing, Ms. Good stated that she would not be going forward on this issue. App. 432-33. Nonetheless, Petitioner's testimony regarding this issue was elicited during the course of his testimony with respect to Issue #13 in his PCR. App. 441-43. At the PCR hearing, Petitioner explained that if he had testified at trial, he would have told the jury that he stopped giving money to one of the victim's mothers after he and the mother had a falling

out about a woman Petitioner was seeing; about five months after this argument, the victims made their allegations of sexual abuse against him. App. 442-43.

Respondent contends that this claim was "not ruled on by the PCR Court, [and therefore] [it was] not preserved for review for the South Carolina Supreme Court." ECF No. 25 at 37. The undersigned disagrees with Respondent's argument to the extent it asserts that the PCR court did not rule on this issue. Despite counsel's waiver of this issue at the PCR hearing, the PCR court's order included Petitioner's testimony that Victim 2's mother "fabricated the events that led to his arrest and conviction because he quit providing her financial support." App. 519. The PCR court did not find that trial counsel had been ineffective in his cross-examination of the victims' mothers; to the contrary, it specifically held that "[c]ounsel exhibited exemplary performance in his cross-examination of the . . . mothers on motive." App. 527. The PCR court denied and dismissed this allegation. *Id.* Thus, this issue was ruled on by the PCR court. However, Petitioner did not re-allege this claim in his appeal of the denial of PCR relief. *See* ECF No. 25-11. Therefore, Petitioner failed to exhaust his state remedies as to this claim. If Petitioner were to assert these claims at this time, the state court would find them barred. Therefore, this claim is procedurally defaulted, and will be barred from habeas review unless Petitioner can show cause and prejudice, *Coleman*, 501 U.S. at 750, or actual innocence, *Bousley*, 523 U.S. at 623. Petitioner does not set forth any arguments to establish the cause or causes that led to the procedural default of this issue, so it follows that there is no need for this court to consider the issue of prejudice. *Rodriguez*, 906 F.2d at 1159. Further, he does not claim he is actually innocent of the charges. *Bousley*, 523 U.S. at 623. Therefore, (C) is barred from habeas review, and it is recommended that Respondent be granted summary judgment as to this claim.

(D) Counsel failed to attack the credibility of mother with showing that she was in the sex trade (striper, escort) it shows that they all had knowledge of sexual activities and adequately made the allegations up.

Respondent claims this issue is procedurally defaulted. ECF No. 25 at 34, 36. Petitioner does not address the issue of procedural default in his response in opposition to summary judgment. ECF No. 30 at 7. This claim was raised as Issue #4 in Petitioner's PCR application (App. 418), and Ms. Good argued this ground for relief at the PCR hearing. App. 432, 440-441, 436-39. The PCR court specifically denied relief on this ground. App. 526. Petitioner did not address the PCR court's decision in his appeal of the denial of PCR relief. *See* ECF No. 25-11. Therefore, Petitioner failed to exhaust his state remedies as to this claim. If Petitioner attempted to assert this claim at this time, the state court would find it time-barred. Therefore this claim is procedurally defaulted. Petitioner does not set forth any argument to establish the cause or causes that led to the procedural default of this issue, *Coleman*, 501 U.S. at 750, so there is no need for the court to consider the issue of prejudice, *Rodriguez*, 906 F.2d at 1159. Moreover, he does not claim he is actually innocent of the charges. *Bousley*, 523 U.S. at 623. Therefore, (D) is barred from habeas review, and it is recommended that Respondent be granted summary judgment as to this claim.

(E) Counsel failed to present the statements the alleged victims made to the jury to show the inconsistance to cause resonable doubt it shows the testimony was coached by comparing them with direct testimony of the witnesses.

Respondent claims this issue likewise is procedurally defaulted, ECF No. 25 at 34, and Petitioner does not address the issue of procedural default in his response. ECF No. 30 at 7. This claim was raised as Issue #7 in Petitioner's application for PCR (App. 419), but Ms. Good did not go forward on this issue at the PCR hearing. App. 432-33. The PCR court did not specifically

address Issue #7 in its order; instead, it held that all issues that counsel had not addressed at the hearing had been waived:

> Except [for those issues] discussed above, this Court finds that the Applicant affirmatively abandons the remaining allegations set forth in his application at the hearing. . . . The Applicant's failure to address these issues at the hearing indicates a voluntary and intentional relinquishment of his right to do so. Therefore, any and all remaining allegations are denied and dismissed.

App. 526. The PCR court's conclusion that this claim had been waived was not set forth as an issue on appeal from the denial of PCR relief. *See* ECF No. 25-11. Therefore, Petitioner failed to exhaust his state remedies as to this claim, and if Petitioner attempted to assert this claim at this time, the state court would find it time-barred. This claim is procedurally defaulted.

Petitioner does not set forth any argument to establish the cause or causes that led to the procedural default of this issue, *Coleman*, 501 U.S. at 750, so the court need not consider the issue of prejudice. *Rodriguez*, 906 F.2d at 1159. Petitioner makes no claim that he is actually innocent of the charges. *Bousley*, 523 U.S. at 623. Therefore, (E) is barred from habeas review, and it is recommended that Respondent be granted summary judgment with respect to this issue.

> (F) <u>Counsel</u> <u>failed</u> for failing to obtain or discover and utilize prior criminal records of prosecutions witnesses[.]

Respondent argues that this issue also is procedurally defaulted. ECF No. 25 at 34. Petitioner does not address the issue of procedural default in his response. ECF No. 30 at 7. This claim was raised as Issue #10 in Petitioner's application for PCR (App. 419), and Ms. Good argued this ground for relief at the PCR hearing. App. 432, 440-441, 436-39. The PCR court denied relief on this ground. App. 526. This claim was not raised as a ground for appealing the denial of PCR relief, *see* ECF No. 25-11, and if Petitioner were to assert this claim at this time, the state court find it time-barred. This claim is procedurally defaulted. As with the other claims already discussed, Petitioner does not argue any cause for the procedural default of this

issue, *Coleman*, 501 U.S. at 750, so the court need not consider the issue of prejudice, *Rodriguez*, 906 F.2d at 1159. Petitioner does not contend he is actually innocent of the charges. *Bousley*, 523 U.S. at 623. Therefore, this claim is barred from habeas review, and it is recommended that Respondent be granted summary judgment with respect to (F).

> (G) Counsel <u>failed</u> by not obtaining and expert witness to testify as a defense as to reasons that a mother and the allege victims would make up the allegations it would support when the money stopped the allegations suddenly started it show motive[.]

Respondent argues that this issue also is procedurally defaulted. ECF No. 25 at 34, 37. Petitioner does not address the issue of procedural default in his response in opposition to summary judgment. ECF No. 30 at 7. This claim was raised as Issue #11 in Petitioner's application for PCR (App. 419), but Ms. Good waived this claim at the PCR hearing. App. 432-33. The PCR court held that this claim had been waived and therefore it was denied and dismissed. App. 532. This claim was not raised as a ground for appealing the denial of PCR relief. *See* ECF No. 25-11. If Petitioner attempted to assert this claim at this time, the state court would find it time-barred. As Petitioner does not provide the court with any argument to establish the cause of the procedural default of this issue, *Coleman*, 501 U.S. at 750, the court will not address prejudice, *Rodriguez*, 906 F.2d at 1159. Petitioner likewise does not claim he is actually innocent of the charges. *Bousley*, 523 U.S. at 623. The undersigned concludes that (G) is barred from habeas review and recommends that Respondent be granted summary judgment as to this claim.

> (H) Counsel <u>failed</u>: misadvising and not adequately explaining to the applicant the extent of how they could use prior conviction in that only they could tell the jury he had felonies and not what the exact crime were because they would be preducicial an that prevented the defendant from presenting his defense.

Respondent claims this issue is procedurally defaulted. ECF No. 25 at 34, 36. Petitioner does not address this argument in his response. ECF No. 30 at 7. In this claim, Petitioner alleges that his trial counsel failed to adequately explain to him the extent to which his prior conviction for committing a lewd act on a minor could be brought out at trial. App. 441-42. At the PCR hearing, Petitioner claimed that he had wanted to testify at trial, but that trial counsel led him to believe that his conviction for committing a lewd act on a minor would "probably" be brought up if he testified. App. 441. Petitioner stated that he would have testified in his defense had he known that the jury potentially would have learned only that he had been convicted of a felony, and may not have learned the specific nature of the felony. App. 442.

This claim was raised as Issue #13 in Petitioner's application for PCR (App. 419), and Ms. Good argued this ground for relief at the PCR hearing. App. 433, 441-42. The PCR court denied relief on this ground. App. 527, 529. This claim was not raised as a ground for appealing the denial of PCR relief. *See* ECF No. 25-11. Therefore, the Petitioner failed to exhaust his state remedies as to this claim, and the state court would find his claims barred were he to assert them at this time. Petitioner does not offer any argument to establish the cause for the procedural default of this issue, *Coleman*, 501 U.S. at 750, so the court need not address prejudice, *Rodriguez*, 906 F.2d at 1159. Petitioner does not claim he is actually innocent of the charges. *Bousley*, 523 U.S. at 623. Therefore, (H) is barred from habeas review by this court, and it is recommended that Respondent be granted summary judgment as to this claim.

> (I) <u>Counsel</u> <u>failed</u> to object to vouching of the expert witness concerning Accomodation by inserting her on opinion and again on her vouching her own credibility . . . .

Respondent concedes that this claim of ineffective assistance of counsel was exhausted in state court. ECF No. 25 at 67. The undersigned agrees. This claim was raised to the PCR court as

Issue #14, and Ms. Good argued this ground for relief at the PCR hearing. App. 420, 433, 443-444. The PCR court denied relief on this issue. App. 529-30. This claim was raised as Issue #1 in Petitioner's appeal of the PCR court's order, and the South Carolina Supreme Court denied the petition for a writ of certiorari. ECF No. 25-11 at 2; 25-13. Therefore, this claim is properly preserved for review by the court, and this claim will be addressed below in the Merits section.

> (J) <u>Counsel</u> <u>failed</u> to object to the prejudicial closing remarks of the solicitor stating "Is that something you would do? or is that something a child molester like Scott Parker would do so they all could sleep together The solicitor kept making inflanatory remarks to play on the prejudices and passion of the jury counsel failed by not objecting to these highly prejudicial remarks that inflamed the passion of the jury[.]

Respondent likewise concedes that this claim of ineffective assistance of counsel was exhausted in state court, ECF No. 25 at 72, and the undersigned agrees. The claim was raised to the PCR court as Issue #15, and Ms. Good argued this ground for relief at the PCR hearing. App. 420, 433, 446-47. The PCR court denied relief on this issue. App. 530-31. This claim was raised as Issue #2 in Petitioner's appeal of the PCR court's order, and the South Carolina Supreme Court denied the petition for a writ of certiorari. ECF Nos. 25-11 at 2; 25-13. This claim is properly preserved for review by the court, and will be addressed below in the Merits section.

> (K) Counsel engaged in a conflict of interest by not giving defendant his discovery. misadvising on testifying not objecting to the highly inflammatory remarks and the improper comments, not properly cross-examining the wittnesses to present a complete defense. Not preserving and objection to the reasonable doubt instructions[.]
>
> Prosecution misconduct by stating in closing arguments highly prejudicial and inflamatory remarks use to play on the passion and prejudices of the jury[.]

The undersigned notes that the first paragraph of (K) was set forth, almost verbatim, as Issue #19 in his PCR application, and the second paragraph of the eleventh claim was set forth as

Issue #18 in his PCR application. App. 420. At the PCR hearing, Ms. Good said she would not be going forward on Issues #18 and #19. App. 432-33. As these two issues were not addressed by PCR counsel, the PCR court held that they had been waived and denied and dismissed them. App. 532. These claims were not raised as grounds for appealing the denial of PCR relief. *See* ECF No. 25-11.

Respondent characterizes (K) as presenting two arguments: (1) trial counsel's conflict of interest, and (2) prosecutorial misconduct in his closing argument. Respondent claims these issues are procedurally defaulted because these two arguments were not ruled on by the PCR court, and therefore were not preserved for review by the South Carolina Supreme Court. ECF No. 25 at 34, 37.

The undersigned takes a different view of (K). A fair reading of Petitioner's PCR application and his habeas Petition, informed by the Supreme Court's mandate that pro se petitions must be accorded liberal construction, compels the undersigned to view (K) as presenting six discrete arguments that merit individual analysis. Thus, the court views Petitioner as arguing that his trial counsel engaged in a conflict of interest by (1) not giving defendant his discovery; (2) misadvising him as to whether he should testify; (3) not objecting to the prosecutor's highly inflammatory and improper comments; (4) not properly cross-examining the witnesses to present a complete defense; and (5) not preserving an objection to the reasonable doubt instructions. In addition, Petitioner claims the prosecutor engaged in misconduct when he made highly prejudicial and inflammatory remarks in his closing argument which played on the passion and prejudices of the jury.

While it is true that the five allegations set forth in the first paragraph of (K) were listed as #18 and #19 in the PCR application, they also were raised as separate issues before the PCR

court. For example, the first claim—that trial counsel did not give Petitioner certain discovery (consisting of telephone records)—was raised as Issue #1 in Petitioner's PCR brief, argued by Ms. Good at the PCR hearing, and denied by the PCR court. App. 418, 432-33, 524. This issue was not raised in the appeal of the PCR order. *See* ECF No. 25-11 at 2. Likewise, Petitioner's second claim—that his trial counsel misadvised him as to whether he should testify—was raised as Issue #13 in the PCR brief, argued by Ms. Good at the PCR hearing, and denied by the PCR court. App. 419-20, 432-33, 441-443, 478, 493-94, 527, 529. This issue was not raised in the appeal of the PCR order. *See* ECF No. 25-11 at 2. If Petitioner attempted to assert these claims at this time, the state court would find them time-barred. The undersigned concludes that these claims are procedurally defaulted.

The third claim—that counsel failed to object to the solicitor's inflammatory remarks and improper comments—was raised as Issue #15 in the PCR brief, argued by Ms. Good at the PCR hearing, and denied by the PCR court. App. 420, 432-33, 445-47, 485-86, 496-497, 530-31. Petitioner's counsel raised this argument on appeal of the PCR court's order, ECF No. 25-11 at 2, but appellate review of the case was denied, ECF No. 25-13. Therefore, this issue is properly exhausted and appropriate for habeas review by the court. This issue will be addressed below in the Merits section.

Petitioner's fourth claim in (K) alleges that trial counsel failed to properly cross-examine the witnesses and therefore failed to present a complete defense. This issue was raised by Petitioner in his PCR brief as Issues #2, #3, #4, #5, #8, #9, and #12. App. 418-19. At the PCR hearing, Ms. Good argued Issues #4 and #12. App. 432-33. These issues were denied by the PCR court, App. 525-27, and were not raised in the appeal of the PCR order. *See* ECF No. 25-11 at 2. In (K)'s fifth claim, Petitioner contends that trial counsel failed to preserve an objection to the

trial court's instruction to the jury concerning reasonable doubt. This issue was raised as Issue #16 in Petitioner's PCR brief. App. 420. At the PCR hearing, Ms. Good did not go forward on this issue. App. 432-33. Nonetheless, the PCR court ruled on it and found it to be "without merit." App. 531-32. This issue was not raised in the appeal of the PCR order. *See* ECF No. 25-11 at 2. If Petitioner attempted to assert these claims at this time, the state court would find them time-barred. The undersigned concludes these claims are procedurally defaulted.

Petitioner argues in his sixth claim in (K) that the solicitor engaged in misconduct when he made highly prejudicial and inflammatory remarks to the jury in an effort to appeal to their passions and prejudices. This claim is virtually identical to Issue #18 in the Petitioner's PCR brief. App. 420. At the PCR hearing, Ms. Good did not go forward on Issue #18, App. 432-33, and the PCR court held that issue had been waived, and denied and dismissed it, App. 532. This issue was not raised in the appeal of the PCR order. *See* ECF No. 25-11 at 2. This claim would be time-barred if Petitioner attempted to assert it in state court at this time. Therefore, it is procedurally defaulted.

As noted above, Petitioner may surmount the bar of procedural default and have his claims addressed on the merits in a federal habeas proceeding if he can show cause for the default and actual prejudice as a result of the alleged violation of federal law, or show that he is actually innocent. *Coleman*, 501 U.S. at 750; *Rodriguez*, 906 F.2d at 1159; *Bousley*, 523 U.S. at 623. Petitioner offers no explanation as to the cause of defaulting the first, second, fourth, fifth, and sixth claims in (K), and offers no argument as to his actual innocence. Therefore, except for the third claim, which is procedurally exhausted, the other claims in (K) are barred from habeas review. It is recommended that Respondent be granted summary judgment as to the first, second, fourth, fifth, and sixth claims in (K).

41

    3.  GROUND FIVE: Improper vouching of expert witness
        Supporting Facts: Inserting her personal opinion
        vouching on her own credibility in state
        By her vouching it prejudices the jury.

In Ground Five, Petitioner contends that the testimony of Heather Smith, the State's expert witness, improperly vouched for the credibility of the two victims who testified against him. *Id.* Respondent argues that Ground Five was never raised to the state's highest court, and therefore it is procedurally defaulted and barred from habeas corpus review. ECF No. 25 at 34-35, 79. In addition, Respondent argues that this claim does not sound in habeas because Petitioner has not claimed a federal Constitutional violation resulting from Ms. Smith's allegedly improper vouching. ECF No. 25 at 79, citing 28 U.S.C. 2254(a); *see also Corcoran*, 562 U.S. at 5 ("The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

It is true that Petitioner's defense counsel voiced no objection whatsoever to Ms. Smith's testimony, App. 324-337, 343-344, so the issue as to whether her testimony improperly bolstered the State's case was not preserved for appeal. *Mizell*, 570 S.E.2d at 180 ("In order to preserve an issue for appellate review, the issue must have been raised to and ruled upon by the trial court.") (citations omitted). Moreover, counsel's failure to make a contemporaneous objection to Ms. Smith's testimony at trial creates a procedural bar that precludes federal habeas review of the claim. If the claim regarding Ms. Smith's alleged improper vouching had been raised on direct appeal, it would have been dismissed as not properly preserved for review. Because Ground Five, as a freestanding claim, was never reviewed by the state's highest court, it is procedurally barred from federal habeas corpus review. *Matthews v. Evatt*, 105 F.3d at 911. "Federal habeas review of a state prisoner's claims that are procedurally defaulted under independent and

42

adequate state procedural rules is barred unless the prisoner can show cause for the default and demonstrate actual prejudice as a result of the alleged violation of federal law, or prove that failure to consider the claims will result in a fundamental miscarriage of justice." *Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir. 2008) (citations omitted). Petitioner does not allege any cause for the default, or argue actual prejudice, or allege that a fundamental miscarriage of justice will occur if this claim is not considered.

However, a close reading of Petitioner's Petition and his response in opposition to summary judgment[5] indicate that in this Ground, Petitioner is arguing that his trial counsel was ineffective for failing to object to a portion of Ms. Smith's testimony, which he believes to have bolstered the victims' credibility. In his Petition for habeas relief, Petitioner argues he raised Ground Five in his PCR application. ECF No. 1 at 19 (Ground Five (d)(1) & (2)). Issue #14 in Petitioner's PCR application alleged:

> Counsel failed to object to vouching of the expert witness concerning Accomodation by inserting her opinion of accomodation by alleging we all do it. We all accomodate to things in our life we don't like. Pg.s 333-34. Futher, counsel failes to object again to the expert's vouching her own credibility by stating "Typically that would indicate to me that there had not been a false allegation made." Pg. 344.

App. 420, PCR Issue #14. PCR counsel argued this issue before the PCR court (App. 432-33), but the PCR court denied relief, holding:

> Applicant failed to prove counsel was ineffective for failing to object to Smith's testimony that allegedly bolstered the credibility of the victims. (Trial Tr. p. 344). This Court finds Counsel provided sound reasoning for not objecting here. Counsel noted that her testimony was in part helpful for the defense. Victim Minor 2 [sic] had previously recanted his false allegations of child abuse against his mother. See <u>Rhodes v. State</u>, 349 S.C. 25, 561 S.E.2d 606 (2002) (finding that

---

[5] Petitioner's response in opposition to summary judgment refers to "facts," found at App. 342, lines 16-20, and lists four South Carolina cases—two of which he represents as holding, under certain circumstances, that counsel was ineffective for failing to object to certain testimony or arguments. ECF No. 30 at 8.

> trial counsel articulated an objectively reasonable strategy for his failure to object and was not ineffective). Regardless, Applicant failed to prove the testimony at issue constituted improper bolstering. This Court finds Applicant failed to prove the alleged error here constituted prejudice in light of his convincing evidence of guilt. See State v. Kromah, 401 S.C. 340, 361-62, 737 S.E.2d 490, 501 (2013) (subjecting the erroneous qualification of a forensic interviewer to a harmless error analysis). Therefore, this allegation is denied and dismissed.

App. 529-30. This claim was one of two issues appealed from the PCR court, ECF 25-11 at 2, and by brief, appellate counsel argued that Ms. Smith's "testimony's only purpose was to impermissibly bolster the credibility of the complainants." ECF No. 25-11 at 10. The Supreme Court of South Carolina denied the petition for a writ of certiorari following the denial of Petitioner's application for PCR. ECF No. 25-13. Because the PCR judge addressed this issue in his order of dismissal, if the South Carolina Supreme Court had granted certiorari, it would have been able to review this issue. *Pruitt*, 423 S.E.2d at 127 n.2 (stating "the general rule that issues must be raised to, and ruled on by, the post-conviction judge to be preserved for appellate review."). Thus, Petitioner has exhausted this claim insofar as it is asserted as one claiming ineffective assistance of counsel, and the undersigned concludes that, as such, the issue is properly before the court for purposes of habeas review. This issue will be addressed below in the Merits section in conjunction with the claims of ineffective assistance of counsel in Ground Four (I), which asserted that "Counsel failed to object to vouching of the expert witness concerning Accomodation by inserting her on opinion and again on her vouching her own credibility on[.]" ECF No. 1 at 18.

> 4.  GROUND SIX: Improper Reasonable Doubt Instruction
> Supporting Facts: Counsel failed to properly preserve and objection for the court giving two different reasonable doubt instructions in violation of the Supreme Court ruling in "Manning" that only the "Hesitate to Act" instruction should be given. The two different instructions created a higher standard that prejudiced the defendant.

In Ground Six, Petitioner claims that his trial counsel was ineffective for failing to object to and preserve an alleged error made by the trial court when it instructed the jury as to reasonable doubt. *Id.* The undersigned notes that Ground Six is similar to Ground Three, except that Ground Three claims that the trial court's error violated Petitioner's Fourteenth Amendment right to due process, and Ground Six claims that trial counsel provided ineffective assistance when he failed to object to the trial court's jury instructions.

After the trial court instructed the jury, the jury retired, and Petitioner's trial counsel stated the following as to the reasonable doubt instruction:

> I don't know if the Supreme Court has approved this language or not. You used the word if there is a real possibility of the Defendant being innocent, you should find him not guilty. Then you said, but if you are a firmly convinced of his guilt, you should find him guilty. To me firmly convinced seems more of a clear and convincing standard than beyond a reasonable doubt standard.

App. 384-85. The Court responded: "I have used that language right out of Victor versus Nebraska. That's why I charge both Manning, hesitate to act, and firmly convinced." [6] App. 385. Petitioner's counsel replied: "That's why I said I didn't know if the language is there or not. You fully covered reasonable doubt. I think the jury fully understands it. I just wanted to make sure that I wasn't going to miss anything on the record." *Id.* The Court said, "Yes, Sir." *Id.* Counsel then said, "The other issue I would have . . . is, on the verdict form . . . ." *Id.*

The above-quoted colloquy indicates that trial counsel did not voice an objection to the jury instruction. Respondent argues, and the court agrees, that the issue was not preserved for

---

[6] *See Victor v. Nebraska*, 511 U.S. 1 (1994). The South Carolina Court of Appeals, relying on *Victor*, recently observed that "a trial court is not prohibited from, nor required to, define reasonable doubt." *South Carolina v. Moore*, Appellate Case No. 2011-186046, No. 2013-UP-291, 2013 WL 8538735, at *1 (S.C. Ct. App. June 26, 2013) (citing *Victor*, 511 U.S. at 5); *see also State v. Manning*, 409 S.E.2d 372, 375 (S.C. 1991) (suggesting the trial court give no further definition for reasonable doubt than "[a] reasonable doubt is the kind of doubt that would cause a reasonable person to hesitate to act"), *overruled on other grounds by State v. Aleksey*, 538 S.E.2d 248, 251 n.1 (S.C. 2000).

direct appellate review. ECF No. 25 at 34-35, 81. Although Petitioner, in his response in opposition to summary judgment, directs the court's attention to certain lines of two pages in the trial transcript which contain the jury instructions, he does not set forth any argument as to this issue. *See* ECF No. 30 at 11, citing Tr. 289:18-20 and Tr. 272:21-25.

Petitioner raised the allegation that counsel failed to properly preserve an objection to the court's reasonable doubt jury instructions as Issue #16 in his PCR brief. App. 420. At the PCR hearing, Ms. Good did not go forward on Issue #16. App. 432-33. However, the PCR court specifically addressed the issue in its order, holding that "Applicant's allegation that counsel was ineffective for failing to object to the trial judge's allegedly erroneous and prejudicial jury instruction on reasonable doubt is without merit. . . . This Court finds any objection to the trial judge's instruction on reasonable doubt would have been ill-founded. . . . Therefore this allegation is denied and dismissed." App. 531-32. This issue was not raised in the appeal of the PCR order. *See* ECF No. 25-11 at 2. At present, this claim would be time-barred if Petitioner attempted to assert it in state court. Therefore, it is procedurally defaulted.

As noted above, Petitioner may avoid the bar of procedural default and have his claims addressed on the merits by a federal habeas court if he can show cause for the default and actual prejudice as a result of the alleged violation of federal law, or show that he is actually innocent. *Coleman*, 501 U.S. at 750; *Rodriguez*, 906 F.2d at 1159; *Bousley*, 523 U.S. at 623. Petitioner offers no cause for default, nor does he argue prejudice or his actual innocence. Therefore, this claim is barred from habeas review, and it is recommended that Respondent be granted summary judgment on Ground Six.

    5.  GROUND SEVEN: <u>Prosecutional Misconduct</u>
Supporting Facts: Solicitor erred in not bringing forth critical "brady material" in a proffessional and timely manner and making highly prejudicial and inflamatory remarks to play on the passion and prejudices

46

of the jury Prosecution should not have immunity from making mistakes like this in trial[.]

The undersigned interprets Ground Seven as alleging two claims of prosecutorial misconduct. First, Petitioner claims that the solicitor failed to timely disclose material evidence in violation of *Brady*.[7] Second, Petitioner alleges that the solicitor's prejudicial and inflammatory remarks improperly influenced the jury.

Respondent contends that Petitioner's claim that the prosecutor violated *Brady* was procedurally defaulted in state court. ECF No. 25 at 83. The undersigned has reviewed the trial transcript and agrees with Respondent; trial counsel never raised any objections as to his receipt of documents after the trial had commenced and never voiced any due process or *Brady* concerns regarding the timing of his receipt of the documents. Furthermore, the *Brady* issue was never mentioned at the trial court level in Petitioner's motion for a mistrial or for a continuance.[8] Thus, the *Brady* issue was not preserved for appeal. The first time Petitioner mentioned a *Brady* violation was on direct appeal, ECF No. 25-6, where he argued that the trial court abused its discretion when it denied Petitioner's motion for a mistrial and for a continuance "[d]espite the State's failure to reveal impeachment evidence pursuant to *Brady*." ECF No. 25-6 at 11.

It could be argued that Petitioner attempted to raise this issue as Issue #10 in his pro se PCR Application, where he claimed that "Counsel was ineffective for failing to discover and utilize prior criminal records of prosecution witnesses." App. 419. Yet Petitioner's habeas

---

[7] "In *Brady*, the Supreme Court held that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Nicolas v. Att'y Gen. of Md.*, 820 F.3d 124, 129 (4th Cir. 2016) (*quoting Brady v. Maryland*, 373 U.S. 83, 87 (1963)). "Therefore, a *Brady* violation contains three elements: the evidence was (1) favorable to the accused, (2) suppressed by the government, and (3) material to the verdict at trial." *Id*. (*citing Monroe v. Angelone*, 323 F.3d 286, 299 (4th Cir. 2003)).

[8] A computerized word search of the trial transcript reveals that there was no mention of *Brady* during the trial.

ground focuses on the solicitor's *Brady* violation, not counsel's error as alleged in Petitioner's PCR Application. At the PCR hearing, Ms. Good waived argument on Issue #10. App. 432-33. Because this issue was not argued by PCR counsel, the PCR court held that it had been waived and denied and dismissed it. App. 532. This issue was not raised as a ground for appealing the denial of PCR relief. *See* ECF No. 25-11. If Petitioner attempted to raise this claim in state court at this time, it would be time-barred. Therefore, it is procedurally defaulted.

As previously discussed, Petitioner may avoid the procedural default bar and have his claims addressed on the merits by a federal habeas court if he can show cause for the default and actual prejudice as a result of the alleged violation of federal law, or show that he is actually innocent. *Coleman*, 501 U.S. at 750; *Rodriguez*, 906 F.2d at 1159; *Bousley*, 523 U.S. at 623. Petitioner offers no cause for the default, nor does he argue prejudice or his actual innocence. Therefore, this claim is barred from habeas review, and it is recommended that Respondent be granted summary judgment on the first part of Ground Seven.

The second part of Ground Seven is similar to Petitioner's argument in the sixth claim in (K)—that the solicitor engaged in misconduct when he made highly prejudicial and inflammatory remarks to the jury in an effort to appeal to their passions and prejudices. That claim, in turn, is virtually identical to Issue #18 in the Petitioner's PCR brief. App. 420. At the PCR hearing, Ms. Good did not go forward on Issue #18, App. 432-33, and the PCR court held that issue had been waived, and denied and dismissed it. App. 532. This issue was not raised in the appeal of the PCR order. *See* ECF No. 25-11 at 2. This claim would be time-barred if Petitioner attempted to assert it in state court at this time. Therefore, it is procedurally defaulted. Petitioner does not argue cause for the default, not does he argue prejudice or actual innocence.

Therefore, this claim is barred from habeas review, and it is recommended that Respondent be granted summary judgment on the second part of Ground Seven.

In conclusion, having reviewed the record and the parties' legal memoranda, the undersigned finds that Petitioner's Ground Three, claims (A), (B), (C), (D), (E), (F), (G), (H), and five of the six claims set forth in (K) in Ground Four, Ground Five, Ground Six, and Ground Seven are procedurally barred from consideration by this court. Therefore, it is respectfully recommended that Respondent's Motion for Summary Judgment be granted as to those claims.

      C.     Merits Analysis—Ground One; Ground Four (I), (J), and the third claim in (K); and Ground Five.

          1.     Claim of Violation of Confrontation Clause and Due Process.

As previously noted, "a federal habeas court may consider only those issues which have been 'fairly presented' to the state courts." *Matthews v. Evatt*, 105 F.3d at 911. "[F]air presentation contemplates that 'both the operative facts' and the 'controlling legal principles' [were] presented to the state court." *Pethtel v. Ballard*, 617 F.3d 299, 306 (4th Cir. 2010) (citations omitted). Although the claims presented in state court and federal court need not be "identical," *Ramdass v. Angelone*, 187 F.3d 396, 409 (4th Cir. 1999), a petitioner "must have fairly presented to the state courts the substance of his federal habeas corpus claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citation omitted). Presenting the "substance" of the claim requires that the claim "'be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.'" *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)).

              a)     Trial Court Error

              GROUND ONE: Trial court erred by refusing to grant a mistrial

> Supporting Facts: The Appellant's rights to confrontation of witness and due process was adversely affected when state failed to reveal records which contained impeachment evidence for a substantial portion of trial which prejudiced defense counsel's ability to confront the key witnesses in a trial solely based on the credibility of the key witnesses.

ECF No. 1 at 6. Respondent contends that this issue is properly before the court, as it was raised at trial, and the motion for a mistrial was denied. ECF No. 25 at 41; *see also* App. 265, 306-07. This issue also was raised on direct appeal. ECF No. 25-6 at 3. Respondent has addressed this issue on the merits, arguing that Petitioner cannot show he is entitled to federal habeas relief because he cannot show that the South Carolina Court of Appeals either made an unreasonable determination of the facts or unreasonably applied federal law when denying relief on this claim. ECF No. 25 at 41.

The term "due process" was not used during oral argument for a mistrial. In fact, it does not appear at all in the trial transcript. Therefore, the undersigned finds that the due process argument was not "fairly presented" to the trial court. However, the trial transcript makes abundantly clear that trial counsel's arguments focused on his ability to confront and cross-examine witnesses in light of the government agency records that had been produced during trial.[9] The undersigned's review of the trial transcript indicates that Ground One, insofar as it alleges a confrontation clause issue, was "fairly presented" to the trial court.

Petitioner's Ground One is identical to Issue #1 as set forth in Petitioner's counseled direct appeal to the South Carolina Court of Appeals. ECF No. 25-6 at 3. Thus, Petitioner also "fairly presented" the substance of the confrontation clause claim set forth in Ground One to the state Court of Appeals. *Harless*, 459 U.S. at 6. In conclusion, because Petitioner presented the

---

[9] Petitioner's trial counsel, Mr. Locklair, stated at trial: "Without that [Department of Social Services] file, I don't think I can properly cross examine these people . . . ." App. 262. He further said: "It looks like there might be the potential need to call witnesses . . . . " App. 265.

claims in Ground One to the trial court and to the state court of appeals as a constitutional claim asserting the right to confront witnesses, Ground One is properly before this court for purposes of federal habeas review. *Id.*

The South Carolina Court of Appeals affirmed Petitioner's convictions in an unpublished per curiam opinion which provided in part:

> As to whether the trial judge erred in refusing to grant a mistrial: State v. Bantan, 387 S.C. 412, 417, 692 S.E.2d 201, 203 (Ct. App. 2010) ("The decision to grant or deny a mistrial is within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion amounting to an error of law."); id. ("The granting of a motion for mistrial is an extreme measure that should be taken only when the incident is so grievous the prejudicial effect can be removed in no other way.").

ECF No. 25-8 at 2.

Despite the summary nature of the Court of Appeals' adjudication, the undersigned must conclude that Petitioner's claims were thoroughly reviewed. The Fourth Circuit has cautioned against a court "presum[ing] that a summary order is indicative of a cursory or haphazard review of a petitioner's claims." *Bell*, 236 F.3d at 158 (citing *Wright v. Angelone*, 151 F.3d 151, 157 (4th Cir. 1998). Indeed, "[t]here is no text in [§ 2254(d)] requiring a statement of reasons. The statute refers only to a 'decision,' which resulted from an 'adjudication.'" *Harrington*, 562 U.S. at 98. The Court of Appeals' summary order is therefore an "'adjudication' of the merits of the claim and must be reviewed under the deferential provisions of § 2254(d)(1)." *Bell*, 236 F.3d at 158 (quoting *Wright v. Angelone*, 151 F.3d at 157)).

A federal court reviewing a habeas claim "must presume that the state court's factual findings are correct unless the petitioner rebuts those facts by clear and convincing evidence." *Nicolas v. Attorney Gen. of Md.*, 820 F.3d 124, 129 (4th Cir. 2016) (citing 28 U.S.C. § 2254(e)(1)). When undertaking an evaluation of §§ 2254(d)(1) and (2), as in the present case,

where the South Carolina Court of Appeals has summarily denied Petitioner's direct appeal, the undersigned must "look through" the summary decision "and evaluate the state trial court's reasoned decision" denying Petitioner's motion for a mistrial. *Brumfield v. Cain*, -- U.S. -- , 135 S. Ct. 2269, 2276, 192 L.Ed.2d 356 (2015) (citations omitted).[10] "A federal court may not grant habeas relief unless the state court arrived at 'a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Nicolas*, 820 F.3d at 129 (quoting 28 U.S.C. § 2254(d)). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98; *see also Grueninger*, 813 F.3d at 525-26 ("looking through" a state court summary refusal to hear an appeal to the prior reasoned decision and observing that "where there is no indication of the state court's reasoning, a federal habeas petitioner must show that there was 'no reasonable basis for the state court to deny relief,' and a federal habeas court must defer under AEDPA to any reasonable 'arguments or theories . . . [that] could have supported[] the state court's decision'") (quoting *Harrington*,

---

[10] *See also Aiken v. Reynolds*, No. 6:15-CV-03270-RBH, 2016 WL 5661696, at *2 (D.S.C. Sept. 29, 2016). In that case, "the Supreme Court of South Carolina summarily refused to hear Petitioner's PCR appeal by denying his petition for a writ of certiorari, see ECF No. 24-6, so the PCR court's decision is the proper one to evaluate under § 2254(d)." (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *Grueninger v. Dir., Va. Dep't of Corr.*, 813 F.3d 517, 525-26 (4th Cir. 2016) ("When a state appellate court summarily affirms a reasoned lower-court decision, or refuses a petition for review, then under *Ylst*, a federal habeas court is to 'look through' the unexplained affirmance to examine the 'last reasoned decision' on the claim, assuming that the summary appellate decision rests on the same ground." (quoting *Ylst*, 501 U.S. at 803-04, 806)); *id.* at 525 ("In applying § 2254(d) in this case, we 'look through' the Supreme Court of Virginia's summary refusal to hear Grueninger's appeal and evaluate the Circuit Court's reasoned decision on Grueninger's claim.").

562 U.S. at 98) (alterations in original)). Accordingly, as *Brumfield* requires, the undersigned will "evaluate the state trial court's reasoned decision" denying Petitioner's motion for a mistrial. 135 S. Ct. at 2276.

b)    The state court's decision

By way of background to the decision, the record shows that Petitioner's state court jury was drawn on October 4, 2010. App. 6. The solicitor informed the court that later that day, a family court judge was scheduled to hear a motion seeking the release of family court records concerning Petitioner's alleged victims; the solicitor described the records as containing "potential impeachment evidence." App. 32-33. The trial judge excused the jury until the following morning. App. 34-38, 67.

On October 5, 2010, before the jury was brought into the courtroom, Mr. Locklair moved for a continuance of the case because the family court had ordered the release of records from the Department of Juvenile Justice ("DJJ") regarding a 2007 incident involving Victim 2 "where [Victim 2] had accused his mother of physically abusing him. . . . [H]e was placed in [Department of Social Services ("DSS")] custody at that time, and then he later recanted that story of physical abuse against his mother." App. 68. Mr. Locklair argued that the case hinged on the credibility of the alleged victims, so the fact that Victim 2 had previously made allegations of criminal conduct against his mother, and recanted those allegations, was crucial to the case. App. 69. He asked for time to subpoena DJJ files to obtain the notes from the person who evaluated Victim 2; he also wanted to obtain the investigative records from DSS and find out whether there were any medical records regarding the alleged physical abuse. App. 70. In addition, the records indicated that Victim 2 had initially denied that Petitioner had acted inappropriately toward him, App. 72-73, and Victim 2 had only told his mother of Petitioner's abuse after a state agency had

53

begun an investigation of his inappropriate behavior towards his ten-yea- old sister. App. 78. The trial court noted that the family court records addressed Victim 2's inappropriate behavior towards his younger sister, and ordered the solicitor to subpoena Dr. Gary Wright and Ms. Beverly Clyburn from the DJJ and make them available to Mr. Locklair for interviews. App. 77. The court denied the motion for a continuance, but allowed Mr. Locklair "some leeway in regards to cross examining [Victim 2]" given the timing of the discovery of the report. App. 77. Mr. Locklair said that his motion for a continuance also was based on the need to interview mental health counselor Heather Scoggins because he had not known about Victim 2's inappropriate behavior towards his younger sister. App. 78, 135-36. According to the solicitor, Ms. Scoggins was already under subpoena, so the court ordered Ms. Scoggins to appear in court later that day with her file. App. 78, 133-34.

At trial, Victim 2 testified on direct examination that he had first disclosed Petitioner's abuse of him in January, 2009, when his mother was driving him to a mental health appointment with Ms. Scoggins, after Victim 2 had gotten into trouble for offering to teach his ten-year-old sister how to kiss. App. 111-12. Victim 2 admitted on direct examination that he might have been trying to deflect attention from himself by accusing Petitioner of abusing him. App. 112. Victim 2 also admitted that in November, 2007, he had been arrested by the police for fighting with his mother, so he told them "that she abused me." App. 115-16. He admitted that "[s]he had not abused me" and admitted he had recanted the accusation of physical abuse afterwards. App. 116. Victim 2 also admitted that he was not fully honest when he first talked to the police in January, 2009 about Petitioner's sexual abuse of him. App. 119-20.

On cross-examination, Victim 2 testified that he told the police in 2007 that his mother had hit him with a flyswatter. App. 121. He admitted that he had lied when he had accused his

mother of physical abuse, and he also admitted that it had taken him several weeks to admit he had lied about it. App. 123-25. Victim 1 testified that he knew that Victim 2's accusation of his mother's physical abuse was false because he had witnessed the incident with the flyswatter. App. 178, 180. Victim 1 said Victim 2 made the false allegations against his mother because he was afraid he was going to go to jail or to the DJJ for fighting with his mother. App. 178-179.

After the lunch break, the solicitor told the court that he had obtained all of the DJJ records, and a copy was being made for Mr. Locklair so he could have them at the afternoon break. App. 201. In addition, Ms. Clyburn from DJJ was available if trial counsel wanted to interview her; Dr. Gary Wright, who was the DJJ examiner, was practicing in Atlanta, and the solicitor had not contacted him, but had found where he practiced. App. 202. Ms. Scoggins was copying the mental health file and was expected to be finished copying that day; Ms. Scoggins also had staff printing computer screens with additional information. *Id.*

The trial continued, and at the next recess, in response to the court's inquiry, the solicitor stated that he had provided Mr. Locklair with the DJJ records and with mental health records from Ms. Scoggins. App. 248-49. The jury was excused at 4:15 p.m.. App. 259. The court ordered the solicitor to make Ms. Scoggins available the following morning. App. 260.

On October 6, 2010, before the jury was brought into the courtroom, Mr. Locklair stated that he had reviewed the DJJ records and the mental health records and determined that the main issue was "the DSS case [in 2007] involving the alleged physical abuse that [Victim 2] recanted against" his mother. App. 260. Counsel stated that although the testimony from Victim 2 and his mother indicated that the DSS investigation was brief, the DJJ and mental health records showed that it had begun in November, 2007, and continued into August, 2008. App. 260-61. Mr. Locklair stated he wanted to obtain the DSS file regarding Victim 2 and his mother, and also

informed the court that there had been an incident in 2004 where Victim 2 had reported to his

mental health counselor that his mother had threatened him with a cigarette lighter. App. 261.

There also were some records reporting that during a fight between Victim 2 and his mother, his

mother had slammed him to the ground and held him by his neck while she spanked him. App.

261-62. Mr. Locklair continued:

> So obviously the DSS involvement goes much further back [than 2007], and it appears if there was nothing done, then there might be at least three incidents of him claiming false abuse, other than the one we knew about.
>
> So I think the DSS file is critical, I would ask the Court to continue the case, at least for a few days, to allow me to get access to that file and go through it. If not, I don't know if it's proper to declare a mistrial and continue it to the next term.
>
> I think that's critical information we should have had before. All this has come out at the last minute. . . .
>
> . . .
>
> Without that DSS file, I don't think I can properly cross examine these people because there are more allegations of false abuse that this child has brought up in the past . . . .
>
> . . .
>
> The other thing was the DJJ . . . records contain no notes whatsoever from Dr. Wright, who is the psychiatrist who actually performed the evaluation, where he talks about the past physical abuse, talks about the alleged sexual abuse. In part of that, his story differs from what he has testified to on the stand as well, but there's no notes from that doctor, who . . . is now in Atlanta.

App. 262-63. Mr. Locklair told the court that although he had the DJJ file, he needed the DSS

file, and stated:

> . . . I am really asking the court to declare a mistrial and continue the case and retry it because basically all this information has really reaffected (sic) how I would have tried the case, had I had all this beforehand with what is in DSS.
>
> I mean, it's a really complicated issue because now it looks like there might be the potential need to call witnesses or had I had this in hindsight, maybe the potential at this point.
>
> . . . There is too much information that has come out, and I think the DSS file will have more new information that's impeachable.
>
> . . .
>
> I am making a motion for a mistrial.

App. 264-65. The trial judge ordered the solicitor to obtain the DSS records regarding Victim 2 in the most expedient manner, and took the motion under advisement. App. 266-68.

At 11:05 a.m., the trial court excused the jury for the remainder of the day and scheduled oral argument on the motion for a mistrial for 4:00 that afternoon. App. 271-72. By that morning, Mr. Locklair possessed the DJJ and mental health records and current DSS records. "I am about to sit down with DSS and go over those right now, what they have, other than the archive records." App. 272-73. The court was informed that there were two sets of DSS records; one set concerned a home study ordered in 2007, and the other set related to Victim 2's placement in foster care in November and December 2007. App. 273. The court observed: "But . . . [Victim 2 and his mother] have been cross examined concerning the '07 foster care and the '07 incident, not with the benefit of you having the DSS records, but they have been cross examined in those regards." App. 273-74. Mr. Locklair responded: "Yes, sir." App. 274. The court again said, "[Victim 2 and his mother] were cross examined by you without objection in regard to that incident [of alleged physical abuse with a flyswatter], again, with you not having the benefit of those DSS records." *Id.* Mr. Locklair responded: "Yes, sir." *Id.* Mr. Locklair said, "[M]y biggest concern is the records from mental health reflect that back on October 28, 2004, . . . he said his mother body slammed him and held him down by his throat or neck while she spanked him . . . ." App. 276.

After a recess, the solicitor informed the court that although Mr. Locklair had requested the DSS report regarding the 2004 incident, DSS had destroyed the 2004 file in 2009. App. 278. However, DSS was able to print out some screen shots of information. *Id.* The Court ordered DSS to turn over the screen shots, and said that if Mr. Locklair "thinks he wants more [information], he can make a motion." App. 280-81. Mr. Locklair argued, as another ground for

a mistrial, that the 2004 allegation of abuse was "another allegation that [Victim 2] apparently has recanted." App. 283. Although he could recall Victim 2 to the stand, "[i]f he denies it, then we have to go and subpoena the person that actually reported it, the nurse or some DSS worker." *Id.* In response, the solicitor argued that under Rule 608(b), SCRE, Mr. Locklair was prohibited from using extrinsic evidence to establish specific instances of conduct by a witness for purposes of attacking or supporting the witness' credibility. App. 284. The solicitor added: "I don't know what areas he wants to go into, but he's not going to be able to do anything, other than ask [Victim 2] a question. I believe he has already asked every question that he wants, unless there is another instance of one of these witnesses making an allegation that they later recanted that he has not addressed." App. 285.

The court asked: "Mr. Locklair, . . . [t]ell me what it is you want to ask [Victim 2] or [Victim 2's mother]." App. 285-86. Mr. Locklair said that in a July 2009 report, Victim 2 had told a physician that in 2007, his mother had "attack[ed] him on the head with a flyswatter . . . ." App. 286. The court said: "[H]e has already testified that he lied about that incident. He recanted that." App. 287. Mr. Locklair argued: "But it also goes to his credibility because she did say . . . she just tapped him with it . . . and there's actually a picture which shows a big red mark across his head." *Id.* He continued:

> Obviously I would have crossed her differently about what she said occurred . . . . She said she just hit him in the face but very lightly.
> . . . As far as his credibility, it's just different discrepancies in his story.

App. 288-89. The court responded: "He has already said he's a liar. He has already said that [alleged abuse] wasn't true." App. 289. Mr. Locklair argued: "[T]he more I can show of how much a liar he is to the jury, the better it is for my case. If I can point out six little lies he told rather than two little lies . . . ." *Id.* The court replied: "And I'm not saying that's not a good

strategy . . . . I am saying you are limited by the rules of evidence." *Id.* After a discussion on

recalling Victim 2 for additional cross examination as to the 2007 incident, Mr. Locklair stated:

> At this point, . . . I don't think I would want to bring [Victim 2] up just for the purpose of a limited recross examination. That's why I am moving for a mistrial.
> [I]t would look like me bringing him back up to beat on the poor kid for two or three minutes and sit back down. At that point it looks bad because I have already brought him up once. Then it looks like I am bringing him up there to badger him to a jury . . . .
> That's why I am moving for a mistrial because if that's the case, I probably will not recall him for that limited purpose of bringing up four or five questions. It just makes me look bad for beating up on an alleged victim.

App. 290-291. The court said: "I would be glad to tell this jury–this witness is being recalled for

continued cross examination based on trial rulings of the Court." App. 291. Mr. Locklair said,

"What I'm saying is if the Court doesn't grant the mistrial, I will not want to recall [Victim 2]

just for that limited questioning because I don't think it would be appropriate, nor in my client's

best interest." App. 292. The solicitor offered: "I am willing to recall [Victim 2] and ask him

those questions. Anything I don't cover, Mr. Locklair can bring up in cross." App. 293. The

court then said:

> As you all know, a mistrial is a drastic remedy not to be taken lightly, and I am right now searching for the least obtrusive remedy in that regard.
> That's why you got the records, Solicitor, and turned over the DJJ records yesterday and the Department of Mental Health records. I think the DJJ records were included within the Department of Mental Health record.
> Mr. Locklair had the opportunity during the evening recess to review those records. This then led to the DSS records. He has had—not all day—but a substantial part of the day to review the DSS records and can continue to review those over the evening hours if I do not declare a mistrial.
> If there is, based on those records, there is additional information that he wants before the jury that is admissible under the rules . . . [I]f based on those records there are additional questions he would like to ask or have asked of [Victim 2], my in limine ruling right now is I will allow you to do that.
> . . . .
> What other areas do you want to explore should I not grant the mistrial?

App. 293-94. Mr. Locklair responded that he wanted to explore the unfounded 2004 DSS case and whether Victim 2 had reported other incidents of physical abuse. App. 294-98. The court said, "[H]e ha[s]n't recanted [the 2004 incident]. It didn't come out." App. 298. The court then ruled that Mr. Locklair could ask specific questions about Victim 2's reporting of alleged physical abuse in 2004. App. 299. In addition, Mr. Locklair wanted to ask about the circumstances under which Victim 1 had been kicked out of Victim 2's house because of violence towards Victim 2's younger sister. App. 302-03. The court said it would permit in camera examination of Victim 1 and Victim 2 as to this issue. App. 304-05. As there were no other evidentiary issues to discuss, the court ruled:

> At this time I find that a mistrial being a drastic remedy—and I have looked at the factors and the standards and the discretion I have in that regard.
> I have requested the State and the State has complied with those requests as has the Department of Mental Health and [DSS], to expedite the securing of records and turning them over to the defense in this case.
> The defense has had since about 4:00 o'clock yesterday afternoon, Tuesday afternoon, to review the mental health records [and the DJJ records], and had been provided with DSS records today.
> There has been no evidence or evidence taken since about 3:30 yesterday afternoon, which would have been the 5th of October. We are not starting back as far as the jury until 9:30 in the morning, and I will allow the defense at their request and the State consents to recalling [Victim 2].
>     . . .
> I would deny the motion for a mistrial at this time.

App. 306-08.

On October 7, 2010, Victim 1 and Victim 2 were cross-examined in camera by Mr. Locklair; Victim 2 did not recall telling a counselor that Victim 1 had to move out of Victim 2's home in November 2005 because he had hurt Victim 2's sister, and denied that Victim 1 had ever hurt his younger sister. App. 308-09. Victim 1 denied having lived with his aunt in November 2005. App. 310. Mr. Locklair told the court he was not going to go forward with the issue of whether Victim 1 had acted violently towards Victim 2's sister; Mr. Locklair planned to

recall only Victim 2 for a limited cross-examination. App. 311-12. The jury was brought in, and

Mr. Locklair continued his cross-examination of Victim 2, who again admitted that he had

recanted the story of his mother's physical abuse in November, 2007. App. 312-14. Victim 2

denied ever reporting that his mother had previously abused him; "I have said maybe she had hit

me or something like that but never abused." App. 314. He admitted changing those stories

"once or twice." *Id.* He did not recall his mother threatening him with a cigarette lighter. App.

315. Mr. Locklair did not offer any testimony but rested his case. App. 348, 350. He renewed his

motions for the record, and the court renewed its earlier rulings. App. 350.

c)      Analysis

"The right to an effective cross-examination . . . is an integral part of the right of

confrontation guaranteed under the Sixth Amendment, made applicable to the States by the

Fourteenth Amendment. While the scope and extent of cross-examination is generally declared

to be within the sound discretion of the trial court, that discretion must be exercised with due

regard for the defendant's constitutional rights." *Snyder v. Coiner*, 510 F.2d 224, 225 (4th Cir.

1975) (footnotes omitted).

Under South Carolina law, "[t]he granting of a mistrial is a matter within the sound

discretion of the trial judge, and his decision will not be disturbed on appeal absent an abuse of

discretion amounting to an error of law." *State v. Washington*, 432 S.E.2d 448, 449 (S.C. 1992)

(per curiam) (citations omitted). "The grant of a motion for a mistrial is an extreme measure

which should be taken only where an incident is so grievous that the prejudicial effect can be

removed in no other way." *State v. Herring*, 692 S.E.2d 490, 498 (S.C. 2009) (citations omitted).

"A mistrial should only be granted when absolutely necessary," and a defendant must show both

error and resulting prejudice in order to be entitled to a mistrial. *State v. Harris*, 530 S.E.2d 626,

61

628 (S.C. 2000). The burden is on the moving party to show error in denying the mistrial and resulting prejudice. *State v. Tuckness*, 185 S.E.2d 607, 610 (S.C. 1971) (citation omitted).

Although Petitioner argued on appeal that the trial judge abused his discretion in denying the motions because the late discovery of the records did not permit him to attack the credibility of key witnesses and to call rebuttal witnesses, the transcript indicates that Mr. Locklair obtained, and reviewed, all of the extant records as soon as they were provided to him, and that the witnesses testified to incidents reported in those records without Mr. Locklair having to use the records. Further, the solicitor informed the court that he had only become aware of the DJJ records the week before trial and had notified defense counsel of their existence.[11] App. 71-72. By the afternoon break on the first day of trial, Mr. Locklair possessed all of the DJJ records concerning Victim 2. In addition, Mr. Locklair was provided with a separate set of mental health records, and representatives of those agencies were present in the courtroom. App. 201, 248-49. Mr. Locklair reviewed the DJJ and mental health records that night, and informed the court that he had done so on the morning of October 6, 2010. The only records that Mr. Locklair asked for but could not obtain were the 2004 mental health records regarding an alleged incident of abuse; those records could not be obtained because DSS had destroyed the file in 2009. App. 274, 278. The court ordered that the available DSS records (the screen shots) be provided to Mr. Locklair.

In addition, Petitioner was fully allowed to confront the witnesses. The trial court even permitted Mr. Locklair, after he had reviewed the records, to examine the witnesses again in camera, and then the solicitor recalled Victim 2 so that Mr. Locklair could cross-examine him.

---

[11] Had the solicitor not discovered their existence, it appears that Mr. Locklair would not have known of them; he told the trial court that Petitioner had no knowledge of these incidents of alleged physical abuse. App. 71. As Mr. Locklair testified during the PCR hearing, the DJJ records were sealed, and "[w]ithout knowing that [Victim 2] had been charged, I wouldn't have even known to request them." App. 471.

App. 313. Mr. Locklair attacked the credibility of Victim 2 by showing: (1) he had falsely accused his mother of physical abuse; (2) he had initially denied an inappropriate relationship with Petitioner; and (3) he had disclosed Petitioner's sexual abuse of him only at the time he was going to be evaluated for behaving inappropriately toward his ten-year-old sister. Victim 2 was completely impeached by his own testimony, so it was not necessary to call other witnesses. "If a witness admits a prior inconsistent statement, he has impeached himself, and further evidence is inadmissible." *State v. Lynn*, 284 S.E.2d 786, 788 (S.C. 1981) (citations omitted). Once a witness has admitted to making a prior inconsistent statement, a trial court's decision to limit cross examination is not an abuse of discretion. *Id.* Further, as Respondent argues, there was no need for additional witnesses to testify to the fact that Victim 2 was a liar. "The exclusion of impeaching evidence is not prejudicial where it has no meaningful impact on a witness's credibility." *State v. Gunn*, 437 S.E.2d 75, 82 (S.C. 1993) (citing *State v. Ferguson*, 388 S.E.2d 642 (S.C. 1990)).

The undersigned has reviewed the record and cannot say that the trial court's decision to deny a mistrial, or the South Carolina Court of Appeal's decision affirming the trial court, were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Therefore, Petitioner is not entitled to federal habeas relief with respect to Ground One, and it is recommended that Respondent be granted summary judgment as to this ground.

2.    Claims of Ineffective Assistance of Counsel

In *Strickland,* the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. 466 U.S. at 687. Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89; *see also Wright v. Angelone*, 151 F.3d at 161 (noting strong presumption that counsel's performance was within the wide range of professional competence). Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When a petitioner's § 2254 petition raises an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (quoting *Williams*, 529 U.S. at 410). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* The court is mindful of this deferential standard of review when considering Petitioner's ineffective assistance of counsel claims; with this standard in mind, the court turns to the merits of Petitioner's claims that his trial counsel was ineffective.

a)      Ineffective Assistance of Counsel—The Expert Witness

GROUND FOUR:[12]

(I) <u>Counsel</u> <u>failed</u> to object to vouching of the expert witness concerning accommodation by inserting her on opinion and again on her vouching her own credibility on


GROUND FIVE: Improper vouching of expert witness

Supporting Facts: Inserting her personal opinion vouching on her own credibility in state By her vouching it prejudices the jury.

At trial, the State called Heather Smith, who testified that she had been qualified as an expert in the field of child sexual abuse approximately 20 to 25 times. App. 324-26. Petitioner's Ground Four claims that Mr. Locklair provided ineffective assistance when he failed to object to Ms. Smith's testimony regarding the manner in which children accommodate to abuse. Ms. Smith had testified:

> [A] child that has been abused over a long period of time, more than once, many times, accommodates. They really find ways to make it okay that it's happening so that they can make it okay . . . . So children who are chronically abused often tend to disclose at a lesser rate and not as often.
> . . . .
> Accommodation is what we do when we need to put up with something. So we all do it. We all accommodate to things in our life that we don't like. We find ways to make them fit, to make it work if we are in an experience that we don't like. We will do it.
> Children will accommodate to sexual abuse. They find ways to rationalize it.

App. 333-34.

Petitioner's Ground Five claims that Mr. Locklair was ineffective when he failed to object to Ms. Smith's testimony, which he believes vouched for the credibility of the victims. When the solicitor questioned Ms. Smith as to the reasons a child would make a false allegation

---

[12] Issues (J) and the third claim in (K) both concern the prosecutor's closing argument and will be addressed separately below.

of sexual abuse, she responded: "We . . . see children make false allegations when they have gotten in trouble, and they may make a false allegation in order to get out of trouble." App. 343. The solicitor then asked: "But once that reason or the fear of being in trouble is removed, what, if any, reasons would you be aware of that an adolescent male would continue to make those allegations . . . ?" App. 344. Ms. Smith answered: "Typically that would indicate to me that there had not been a false allegation made."*Id.*

At the PCR hearing, Petitioner indicated that he thought Mr. Locklair should have objected to Ms. Smith's statement: "Typically that would indicate to me that there had not been a false allegation made." App. 444.

Mr. Locklair did not object to any of Ms. Smith's testimony. App. 326. However, "[c]onstitutionally effective assistance does not require the assertion of every possible valid objection. Indeed, it is frequently better to remain silent rather than to draw attention to the matter." *Hansford v. Angelone*, 244 F. Supp. 2d 606, 613 (E.D. Va. 2002) (citations omitted)). Mr. Locklair testified at the PCR hearing that with respect to Ms. Smith's testimony, he "tried to get out from her that . . . there could be some inconsistencies in stories, that not everybody always tells the truth." App. 482-83. He added: "I think I got out as much beneficial stuff from her as I could without giving her the chance to hurt us too much." App. 483. For example, Ms. Smith admitted that she had never met either victim. App. 498. In addition, he elicited Ms. Smith's opinion that if a person, such as Victim 2, had a history of recanting accusations, it could indicate that he could be more prone to making a false accusation of sexual abuse. App. 484.

The PCR court held that with respect to Grounds Four and Five, trial counsel had "provided sound reasoning for not objecting" to Ms. Smith's testimony because "[c]ounsel noted that her testimony was in part helpful for the defense. Victim . . . 2 had previously recanted his

false allegations of child abuse against his mother." App. 529. The PCR court further held that Petitioner had "failed to prove counsel was ineffective for failing to object to Smith's testimony that allegedly bolstered the credibility of the victims." *Id.* In addition, Petitioner "failed to prove the testimony at issue constituted improper bolstering. This Court finds Applicant failed to prove the alleged error here constituted prejudice in light of his convincing evidence of guilt." [13] App. 529-30.

As noted previously, "the standards created by *Strickland* and § 2254(d) are both 'highly deferential.'" *Harrington*, 562 U.S. at 105. The undersigned finds Petitioner has failed to demonstrate either *Strickland* prong. First, as the PCR court found, Mr. Locklair "provided sound reasoning" for not objecting to Ms. Smith's testimony, App. 529, and therefore, his performance was not deficient. In addition, Petitioner cannot show he was prejudiced by his attorney's failure to object to the testimony. As *Strickland* teaches, to show prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. The undersigned agrees with the PCR court's finding that, based on the overwhelming evidence against Petitioner, any objection regarding Ms. Smith's testimony was not likely to have had an effect on the outcome

---

[13] Victim 2, who was sixteen at the time of trial, identified Petitioner at trial and testified that Petitioner's sexual abuse of him and of his cousin, Victim 1, began in the summer of 2006, when Victim 2 was twelve years of age. App. 93-94, 96, 98-99, 103. The abuse continued through the summer of 2008, and occurred in Petitioner's camper or at the Masters Inn. App. 104. Victim 1, who was eighteen at the time of trial, likewise identified Petitioner at trial and stated the abuse of him and his cousin began in the summer of 2006, when he was fourteen, and occurred in Petitioner's camper and at the Masters Inn. App. 162-68. The abuse ended in 2008. App. 167.

Victim 2's mother testified that she saw Petitioner hug her son and her nephew, Victim 1, and one time she saw Petitioner pinch Victim 1 on the buttocks. App. 142. Victim 1's mother testified that she "always questioned" the boys' relationship with Petitioner but "[t]hey always denied it." App. 185-86.

The jury began its deliberations at 12:14 p.m., and returned at 1:22 p.m., having found Petitioner guilty of all charges. App. 390-97.

of the trial. Mr. Locklair stated at the PCR hearing that he "thought [the State] had a very strong case, there being two witnesses, their two victims being two different locations, their stories matched up. . . . So I actually thought they had a strong case, especially the fact that the boys were older and willing to come in and testify . . . ." App. 469. As Mr. Locklair recalled at the PCR hearing, both victims "had a good presence about them[selves] as far as . . . being well-spoken young men" who "came across as really credible" witnesses. App. 481.

Next, as the PCR court found, Petitioner failed to show that the testimony constituted improper bolstering. "Improper bolstering occurs when an expert witness is allowed to give his or her opinion as to whether the complaining witness is telling the truth, because that is an ultimate issue of fact and the inference to be drawn is not beyond the ken of the average juror." *Mattison v. Cartledge*, No. 0:15-2323-TLW-PJG, 2016 WL 908451 at *13 (D.S.C. Jan. 21, 2016), *adopted in* 2016 WL 879248 (D.S.C. Mar. 7, 2016), *appeal dismissed* (June 20, 2016) (quoting *State v. Taylor*, 745 S.E.2d 124, 128 (S.C. Ct. App. 2013)). The undersigned agrees with the PCR court that improper bolstering did not occur in this case.

In conclusion, the undersigned finds that the PCR court's dismissal of Petitioner's claim of ineffective assistance of counsel was not an unreasonable application of federal law. Accordingly, the undersigned recommends that Respondent's Motion for Summary Judgment be granted as to claim (I) in Ground Four and as to Ground Five.

> b)    Ineffective Assistance of Counsel—The Solicitor's Closing Argument

> GROUND FOUR:
> (J) Counsel <u>failed</u> to object to the prejudicial closing remarks of the solicitor stating "Is that something a child molester like Scott Parker would do so they all could sleep together the solicitor kept making inflantory remarks to play on the prejudices and passion of the jury

> counsel failed by not objecting to these highly prejudicial remarks that
> inflammed the passion of the jury
>
> (K) Counsel [failed to] . . . object[] to the highly inflammatory remarks
> and the improper comments . . . .

ECF No. 1 at 18. In Ground Four (J) and in the third claim in (K), Petitioner argues that he is
entitled to federal habeas relief because his trial counsel failed to object to the solicitor's
inflammatory and prejudicial remarks in his closing argument. At the PCR hearing, Petitioner
alleged that trial counsel was ineffective for failing to object to the solicitor's question: "Is that
something a child molester like Scott Parker would do so they all could sleep together[?]" as well
as "But if you think [the victims] are lying and you don't believe them, find him not guilty, let
him go. The Masters Inn will always have a room available with a single bed" and, "twenty-five
feet away from you sits a predator, a child molester." App. 446-47, referring to App. 356, 360.

In response, Mr. Locklair testified at the PCR hearing with respect to opposing counsel's
closing statements:

> I generally try not to object and mainly that's due to you don't want to
> draw attention to something they say. It makes a jury think you're scared of it in
> my opinion, but I do try to look out for, you know, blatant misstatements of the
> law or misstatements of fact. But, obviously, the Solicitor is always going to use
> salacious words and, and certain things that try to play on the passion of the jury
> without playing on the passion of the jury.
> I mean, every lawyer does it. If they say they don't, then they haven't had
> a very successful trial career. There's a gray line you got to dance on as far as
> what's playing on their passion and what isn't, but if you can't connect with a
> juror, it's a hard thing. So it's—some of the comments that they made in
> hindsight, maybe I should have objected to, but I don't think that they—I think
> they were what a judge would probably find harmless error. . . . [I]n the grander
> scheme of things, I think the objection would have hurt me more than not
> objecting and letting the stuff come in.

App. 486.

In its order, the PCR court ruled that Petitioner had "failed to meet his burden to prove
counsel was ineffective for failing to object to comments made by the solicitor during the State's

closing argument." App. 530. In so holding, the PCR court stated: "The proper inquiry is not whether the Solicitor's remark was undesirable or condemnable, but whether the comment so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

> Even if the court were to find that solicitor reference [sic] to Applicant as a predator was objectionable, there is no showing that the comment rendered the trial unfair. In the context of the offense for which he was charged and convicted, and the evidence before the jury, the Applicant has failed to prove that the failure to object to this comment likely changed the outcome of the trial. (Trial Tr. p. 360). <u>See</u> <u>State v. Lee</u>, 269 S.C. 421, 237 S.E.2d 768 (1977) ("[S]tatement that defendant was a "menace to society" could not be considered prejudicial since that concept forms the very basis for crimes involving moral turpitude."). The law does not require counsel to raise every available non-frivolous defense. <u>Jones v. Barnes</u>, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Therefore, this allegation is denied and dismissed.

> Applicant failed to prove counsel was ineffective for failing to object to the solicitor's comment that "the Masters Inn will always have a room available with a single bed." (Trial Tr. p. 360). . . .

> This Court also finds that the comment at issue was not sufficiently prejudicial to warrant reversal. The comment constituted an inference on the evidence presented that supported the State's theory of the case. <u>See</u> <u>Smith v. State</u>, 375 S.C. 507, 654 S.E.2d 523 (2007) (concluding any impropriety in the solicitor's closing argument was not sufficient to grant defendant post-conviction relief where solicitor's improper use of the pronoun "I" was limited, did not recur throughout his argument, there was overwhelming evidence of the defendant's guilt, and the trial judge instructed the jury not to consider counsel's statements as evidence). Again, in the context of the offense for which he was charged and convicted, and the evidence before the jury, the Applicant has failed to prove that the failure to object to this comment likely changed the outcome of the trial. Therefore these allegations are denied and dismissed.

App. 530-31.

In analyzing these claims, the undersigned first must determine whether the prosecutor's closing arguments were improper. "If no improper closing argument exists, then [t]rial [c]ounsel

cannot have given ineffective assistance of counsel by failing to object to it[.]" *Golson v. Cartledge*, No. 4:11-CV-350-CMC-TER, 2012 WL 909822, at *24 (D.S.C. Feb. 2, 2012), *adopted in* 2012 WL 909787 (D.S.C. Mar. 16, 2012). The question is whether the solicitor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "Moreover, the appropriate standard of review for such a claim on [a petition for a] writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 642)).

First, the solicitor's characterization of Petitioner as a predator was not improper. As the PCR court noted: "The State's closing arguments must be confined to evidence in the record and the reasonable inferences that may be drawn from the evidence." App. 530 (citing *State v. Copeland*, 468 S.E.2d 620, 624 (1996)). Certainly it could have been inferred from the testimony at trial that Petitioner was a predator. Second, the solicitor's statement that "the Masters Inn will always have a room available with a single bed" and the question "Is that something you would do? Or is it something a child molester like [Petitioner] would do so they can all sleep together?" (App. 356) were not improper statements under *Copeland.* The solicitor was merely repeating evidence in the record: Victim 2 testified that when Petitioner took them to the Masters Inn, there was "one single bed almost every time." App. 127. Victim 1 testified that when they went to the Masters Inn, "usually there was one bed, one king size bed" and the three of them "slept together." App. 168. The solicitor's comments were not improper, so it follows that trial counsel did not provide ineffective assistance by failing to object to them. *See Golson*, 2012 WL 909822, at *24.

The PCR court's rejection of the ineffective assistance of counsel claim was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §§ 2254(d)(1), (2). Therefore, the undersigned recommends that Respondent's Motion for Summary Judgment be granted as to Ground Four (J) and the third claim in Ground Four (K).

V.      Conclusion and Recommendation

Wherefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 26, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

November 3, 2016                                        Kaymani D. West
Florence, South Carolina                               United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**